**FILED**

MAY 1 9 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**Plaintiff**

- **Morris J. Peavey, Jr. –** Pro Se - Plaintiff is a citizen of the United States
- **c/o Eric Peavey  12315 NW 23rd Avenue Miami Florida  33169**
- **305-688-0759**

    **v.**

**Defendant –** United States of America
o   Attorney General Eric H. Holder
o   950 Pennsylvania Avenue SW
o   Washington, DC 20530

3   John McHugh, Secretary of US Army
1400  Pentagon
Washington,  DC

4   E. Sheskni, Secretary of Veterans Affairs
o   810 Vermont Avenue NW
o   Washington, DC 20420

5   Adrienne Thomas NARA Archivist -
o   8601 Adelphi Rd. 300
o   College Park, MD 20740
o

6   Timothy Giethner, Secretary of Treasury
o   US Department of Treasury
o   c/o General Counsel
o   Suite 510
o   740 15th Street NW
o   Washington, DC  20220
o
7   Michael May, Esq.
o   USDOJ  Tax Appellate Section
o   950 Pennsylvania Avenue NW
o   Washington, DC 20350
o
8   JENNIFER KALDOR,  FOIA agent
o   317 VARO
o   9500 Bay Pines BLVD.
o   St. Petersburg FL 33731

Case: 1:11-cv-00937
Assigned To : Boasberg, James E.
Assign. Date : 5/19/2011
Description: Pro Se Gen. Civil

Complaint

## A. JURISDICTION

1) Plaintiffs' claims arise under the Constitution and laws of the United States. This Court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331(a) and 1343(a), and authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure

2) THIS complaint alleges that the Constitutional rights of Plaintiff, Morris J. Peavey, Jr. who presently resides with relatives in Miami Florida with a mailing Address c/o **c/o Eric Peavey 12315 NW 23rd Avenue Miami Florida 33169** and telephone contact 1- **305-688-0759** were violated by the actions of the below named individuals which were directed against Plaintiff during the following dates and encompassing the following violations and charges:

3) Defendant United States and its employees represented by the Secretary General of the United States, Eric H. Holder is charged with violation of Peavey 5th and 9th USCA. This Defendant is sued in individual and official capacity. Because the defendant acted to violate the plaintiff rights which he had under 5th and 9th USCA acting to deprive Plaintiff of property rights without substantial due process and equal protections under the law. The United States has waived it immunity to suit pursuant to such violations as described in this complaint. Peavey has exhausted his administrative remedies and has a standing before this court as will be described in this jurisdictional statement and the charges below. Secretary General of the United States, Eric H. Holder will be served as addressed in the caption.

4) Defendant John McHugh is employed by the United States as Secretary of US Army and is therefore the legal custodian of Plaintiff US Army Military Records. This Defendant is sued in his individual and official capacity. Because the defendant has been notified that his predecessors acted to violate the plaintiff rights which he has under 10 USC§ 1552(a) acting under color of law in that defendants acted in concert prior Secretary of Veterans Affairs and Adrienne Thomas NARA Archivist in a continuous tort and ruse which is procedural violation of §10APA. Defendants name here maintain an unlawfully scheme against the Plaintiff. Secretary John McHugh the legal custodian of Peavey US Army Records has been notified of consistent suppressed, altered, and or prematurely and illegally destroyed his United States Army Health records and OMPF in violation of the rights which he have under §10APA 5 USC §§§ 552, 702, and 706. The Secretary has done nothing to correct the problem. Peavey claim the right to

2

sue under 28 USC §1346 USTCA and Bivens type violations. Defendant's acts were intentional and have caused Peavey pain and suffering, harassment taking of business and personal properties, and a multitude of duress and injuries to his private reputations. The procedural violations have used 38 USC § 511 to circumvent the rights and privileges to equal protection under the law which Peavey have according to the US Constitution amended. Defendants name here will be served at the addresses captioned above.

5) Defendant E. Sheskni is employed by the United States as Secretary of Veterans Affairs making him the chief executive over all Departments of Veterans Affairs (VA). This Defendant is sued in his individual and official capacity. Because the defendant acted to violate the plaintiff rights which he has under §10APA 5 USC §§§ 552 (FOIA), 702, and 706 because the VA is the custodian of Peavey US Army Health records pursuant to US Army assignment in that capacity effectively August 5, 1967. VA has engaged in conspiracy with US Army and NARA to suppress, alter, and prematurely destroy various US Army medical records and cover up US Army acts of malpractice and substantial violations of Peavey rights to due process. Defendant E. Sheskni inherits his predecessor violations of Peavey's rights to his records under FOIA and VA Directive 633 and HIPPA. Defendant E. Sheskni has been notified of the continuing tort employed by VA and NARA whereby the agencies have engaged in concerted acts 1968, 1993-1995, 2001-2003 and 2005 through the present time to deny and refuse official authentic records to ABCMR and have provided various records to Peavey but refuse to authenticate those records providing the ABCMR an alibi for not completing Peavey DD Form 149 Application for the Correction of his US Army records. Defendants name here will be served at the addresses captioned above.

6) Defendant JENNIFER KALDOR, is employed as FOIA agent for VARO 317 St. Petersburg, Florida 33731. This Defendant is sued in her individual and official capacity. Because the defendant acted to violate the plaintiff rights which he has under §10APA 5 USC §§§ 552 (FOIA), 702, and 706; VA Directive 633 and HIPPA acting to refuse Peavey request for authentic copies of his US Army Health Records be sent to ABCMR and acting under ruse to obstruct the availability of Peavey US Army Health Records. Denying ABCMR access after it has sought these records 1968, 2006, 2008-2011. Defendant Kaldor has engaged in continued misconduct to restrict access to Peavey's US Army Records over the long period. Jennifer Kaldor has functioned in the DORD capacity and provided Peavey information which is being

used to knowingly and intentionally violate his rights to these records which are necessary to correct his US Army records.   Jennifer Kaldor has provided conflicting and erroneous information refusing to authenticate records and documents which were previously submitted to Peavey from her predecessor and Mr. Juliano.  Defendants name here will be served at the addresses captioned above.

7)  See Addendum I for additional defendants charged:

## JURISDICTION

8)     JURISDICATION is invoked pursuant to 28 USC §1346 USTCA and Bivens type violations; 5th and 9th USCA;  10 USC§  1552(a); §10APA 5 USC §§§ 552 (FOIA), 702, and 706; 42 USC § 1983  and plaintiff federal standing before this court.  Plaintiff has concurrent jurisdiction before the Federal Court of claim and file here because that court does not examine all constitutional claims contained in this complaint.  This is a mix case and therefore this court has primary jurisdiction.

9)     PENDING CASE:  District Court for Middle District of Florida   Morris J. Peavey, Jr. v. Scott Black et al 09 cv 1975 JSM/AEP

### B.   THE CAUSES OF ACTION & CHARGES

BACKGROUND OF CASE: CAUSE OF ACTION Plaintiff's charges and facts alleged in this petition are true. Plaintiff, an Afro-American and Orthodox Muslim served and enlisted term in the US Army July 24, 64 through August 5, 1967. Peavey had an above average AFOT and GT score and was in above average physical condition with blood pressure of 130/70 and PLUSH IIIII.  Peavey obtained the rank of Sp4/E4 and maintain excellent conduct and excellent efficiency until he was struck by an automobile in the lower back as pedestrian on or about 17 September 1966.    The automobile accident caused Peavey trauma and injury to his Kidney/Bladder/and urinary system (KUB); Cardio Vascular injury and or disease showing blood pressure of 180/120 on 20 September 1966 with no blood pressure readings from 31 January 67 through discharge August 5, 1967 with discharge blood pressure of 140/110 and VA reading of 240/120 on 18 September 67. US Army positive medical findings showed narrowing of arteries; Gr. II/IV Systolic Heart Murmur; bruit in abdomen; IVP show double collecting system on the left.  Trauma due to Peavey injuries caused him 6 days hospitalization, extensive sick time at the US Army Dispensary, two medical profiles "3P" and one with Codes U and D

*4*

restricting parachute jumping and all strenuous physical activities. Peavey went on 30 days sick covalence leave pursuant to AR 40-501 18 Nov 66 through 18 Dec 66 and returned at the end of the 90 day trial pursuant to AR 40-501 Para 3.23. On 22 December 66 Dr. Wise Peavey Primary Army doctor indicated "Compensation Case" showing blood pressure 154/112.

One day latter 23 Dec 66 Peavey is examined by Dr. Lafallet using unorthodox methods. Dr. Lafallet completed his examination while being held in Peavey's arms. Dr. Lafallet indicated that Peavey was fit for full duty because he laughs while holding Dr. Lafallet. The examination did not reference any limits of motions, triggers showing residual pain due to trauma and unhealed injuries, or general orthopedic leagues syndromes or any generally accepted reference to the orthopedic examination. Dr. Lafallet one day reference was not supported by x-rays or any documents to support Dr. Lafallet diagnosis of FIT for FULL DUTY. Dr. Lafallet also ordered mandatory physical training immediately and discontinuance of Peavey medications. Dr. Lafallet subscript of these orders show a parenthetical note (as far as the back is concerned) but records show that all medication were discontinued except aspirin upon Dr. Lafallet's orders and Peavey was immediately assigned strenuous physical training, KP, and policing duties. The harassment resulting from Dr. Lafallet orders were from 23 Dec 66 through 5 Jan 67 when Peavey went AWOL for proper medical treatments.

The twelve days of harassment and denial of proper medical care led to the AWOL and Peavey returned to post on or about 16 Jan 67 and his records were changed. Peavey two medical profiles were changed. A summary court martial was ordered 23 Jan 67. Peavey did not agree to accept the summary court martial but demanded the Special Court Martial with the Medical Evaluation Board (MEB) because he had completed the AR 40-501 trial and found beyond retention in the US Military. A certificate of unsuitability (COU) was ordered and Peavey commanders approved it on 30 Jan 67 before any MEB was completed. JAG approved the COU on 7 February 67 which indicated Peavey was unfit for further military service but he was not released from the US Army. Peavey records showed that he was no longer fit for strenuous military activities and orders had been cut to change his MOS from heavy weapon specialist to administrative clerk; his parachute duties had been discontinued; an order to transfer him to an administrative training unit had been cut prior to his return from the convalescence leave. After JAG approved the COU Peavey was transferred from the 82 Airborne Division to

the 4/73 Artillery and the records show his orders as 710H MOS but other records note that he was an ammo bearer.

Peavey medical records show alterations and inconsistent chronology and the VA and NPRC have provided conflicting information to explain these clear unmistakable errors. 31 Jan 67 report by Dr. Jackson is contained in Peavey records. The Jackson 31 Jan 67 report admits to the various positive accounts by Dr. Wise of trauma to peavey lower torso which report the bruit in the abdomen and impressions showing double collecting system on the left. It admits to heart murmur narrowing of arteries and report high blood pressures although not over 110 diastolic. Dr. Jackson rule out each and every suggested diagnosis made by Dr. Wise which offer injuries and or disease of the KUB which Dr. Jackson rule out indicating that Peavey has a normal IVP. The issue of the IVP is clouded by numerous inconsistencies and clear unmistakable error. Dr. Wise ordered IVP 20 September 66 and noted blood pressure readings of 180/120 and Dr. Wise notations to the record show that he maintained a conversation with Dr. Jackson from that time through the period of Peavey hospitalization in Womack Army Hospital on September 28, 1966 to 4 October 67. Two documents show IVP performed 26 and 29 1966 but only the handwritten copy is signed by Dr. Jackson. Both discharge documents the handwritten one and typed one show changes to include changes from permanent limit duty to limited assignment area. Dr. Jackson notes that the injures due to trauma is ruled out because of a normal IVP but the records does not provide any normal IVP. Dr. Jackson 31 Jan 67 report does not include the accident in the history of Peavey injuries. Dr. Jackson was aware of the accident because of the extensive conversation with Dr. Wise and because he was the WAH doctor who managed Peavey care while in [WAH] hospital.

VA was made the records custodian for Peavey US Army health records and NPRC the custodian of his US Army hospital records which include a period of hospitalization for pneumonia 1965 and the automobile accident 1966. VA did not report material medical information showed in Peavey US Army Health records not recording any blood pressure with diastolic over 110 ignoring the blood pressure readings shown 20 Sept 1966 [185/120] and 22 Dec 66 [154/112] which would indicate that Peavey was beyond AR 40-501 Para 3.23 as of doctor Wise examination 22 December 66 showing 154/112 when Dr. Wise notes "compensation case." VA also continually suppress all information showing Peavey sustained injures to his KUB was disqualified for further retention in the US Military because of substantial injury to the

6

kidney and or heart with any blood pressure was disqualifying. VA conscious suppression of these facts was to cover up US Army knowledge and intentional alteration of records for which VA was custodian. VA cover up show its actions were directed at not showing any record of medical findings related to residual or possible injury to Peavey KUB which were contained in the VA C&P dated 18 Sep 67 where VA suppress medical findings from US Army Health Records; 1/26/68 through 3/4/68 period of VA hospitalization where VA records show +4 protein in urine; abnormal IVP showing double collecting system on left, possible aberrant vessel on right, and scan show dysfunction on the right kidney with suggestion of arteriogram which VA did not provide. Also the VA examination show a non social discharge from Peavey Penis which he complain had been from 8 to 10 months and VA had record from their examinations showing urine loaded with WBC on 1/27/68 and other VA examinations to include records sent to VA from NY Health Department and VA own examinations Oct 25, 1972 and other private doctors.

VA deliberately and intentionally suppressed Peavey records which showed these dysfunctions, injures and or diseases to Peavey KUB to misrepresent what VA knew to be medical facts of US Army injuries.

VA continued to misrepresent Peavey medical injuries and showed the period of hospitalization as two days OPC Out Patient Care on Peavey 5 Dec 1995 C&P report; falsified medical records 1993 and 1995; 1993 acted with NPRC to create a brill file to falsify Peavey original benefit claim; Suppress all records in subsequent VA medical reports; 2001- 2003 sent Peavey family false statements of Peavey death and attempt to destroy all of his records which showed he was a veteran; 2003 -2006 provided false statements as to periods of Peavey medical treatments by Brooklyn VA Hospital to the US District Court; 2006 Mr. Juliano provided Peavey with records showing that he sustained injuries and or disease to his KUB and when he provided these records to ABCMR on or about May 18, 2006 refused to authenticate the records for ABCMR and continued to act with NPRC to refuse ABCMR copies of authentic US Army Medical records continuously violating Peavey rights which exist under 10 USC § 1552 (a)...ABCMR has reported that it has made an exhausting search for Peavey US Army Health records and OMPF on May 18, 2006, October 2, 2008, 2009, 2010 and March 22, 2011 but they are not available. The ABCMR indicate that it can not review Peavey records to determine the matters of fact

7)      See Addendum I for additional defendants charged:

7)   Defendant Timothy Giethner is employed by the United States as Secretary of

Treasury and is therefore executive officer of the various departments of the treasury of

which IRS is one department. This Defendant is sued in his individual and official capacity.

Because the defendant acted to violate the plaintiff rights which he has under 5th USCA acting

under color of tax collection. Defendant IRS acting under color of law in that defendant acted

in concert with Pasco County in a continuous tort and ruse which is procedural violation of §10

APA. Defendants name here maintain an unlawfully scheme against the Plaintiff and his client

James R. Elliott, Mamie A. Horne and other unnamed clients to adopted procedures which has

consistently harass, coerced, intimidated and illegally place a lien on Peavey Clients property

falsely alleging a tax collection liability exist without Tax Assessment Certificates to support

claims against his clients businesses, personal properties to support liens and levies placed

against his clients personal and business properties. IRS has violated §10APA 5 USC §§§ 552,

702, and 706 and Peavey claim the right to sue under 28 USC §1346 USTCA and Bivens type

violations. Defendant's acts were intentional and have deprived Peavey of business and private

properties without due process of law. With total disregard to Peavey rights to represent

clients IRS has acted to harass Mamie A. Horne by placing a lien on her private property

disregarding IRS closing agreements and her rights existing under 26 USC § 7121 and 26

USC§ 7214 prohibiting such action. Secretary Snow was provided a complaint   about Agents

Brown and Williams misconduct but IRS did not correct its abuse of discretion in violation of

26 USC § 7214 but IRS did not correct its records or release the lien until September 14, 2001.

IRS made no effort to correct the injuries accrued to Horne or Peavey resulting from the torts.



Defendants name here will be served at the addresses captioned above.

7)      a.  Defendant Michael May, Esq is employed by the United States as attorney for departments of the treasury and Justice Departments. This Defendant is sued in his individual and official capacity because acted he violate the plaintiff rights which he has under 5th USCA. Defendant Michael May, Esq. Acting under color of law in procedural violation of §10 APA. Defendants name continue the unlawfully scheme against the Plaintiff and his client Mamie A. Horne because Secretary of Treasury O'Neal released the lien from the Property which had been transferred to Morris J. Peavey, Jr. on or about September 14, 200l but refused to provide a copy of certificate of Tax assesses for Peavey or Horne to support the lien held against the property from October 1994 through September 14, 2001.  Mr.  Michael May, Esq. was properly notified of the IRS continuing tort which deprived Horne and Peavey of their Private property and submitted a claim against IRS and Pasco County and Dade City Florida on or about November 2, 2009. Mr. Michael May, Esq. was notified of Peavey rights to represent clients and IRS acts to harass Mamie A. Horne by placing a lien on her private property disregarding IRS closing agreements and her rights existing under 26 USC § 7121 prohibiting such action …about Agents Brown and Williams misconduct but IRS did not correct its abuse of discretion in violation of 26 USC § 7214 but IRS did not correct its records or release the lien until September 14, 2001.    Mr. Michael May, Esq. was provided copies of documents which show USDOJ acts to protect the frauds against the courts resulting from the ruse and misconduct of Karla Owens, Attorney for Dade City.    United States by Michael May has continued to protect the false statements made by Karla Owen to the US District Court for SD Florida in Mamie A. Horne v. SSA et al 08 cv 22334 CMA/Dube. Mr. Michael May, Esq. has

*9*

moved for stays of discovery and continued to violate Peavey rights existing under FRCP Rule 37 and engaged in ex-parte acts to cause US Court of Appeal for 11th Cir Case 10-12441FF to be truncated and returned to US District Court after Peavey appealed a final order of the District Court.    Peavey Appeal was returned to the District Court and Mr. May received favorable dismissals on motions for res judicata which were actually motions derived from fraud upon the court and refuse to look at any facts which show Karla Owen fraud and IRS and Pasco County silence.   Mr. May act again ex-parte and got the court to refuse discovery of evidence and facts which clearly show IRS was violating 26 USC§ 7121 as he continue to argue IRS acts were collection activities not reprisal discrimination and acts with state officials violating 42 USC§ 1983 and engaging United State Officials in misconduct and taking. Defendants name here will be served at the addresses captioned above.

because the records are not available. These actions demonstrate not only futility and the clear inability to obtain any administrative remedy but the defendants clear disregard for Due Process.

## CHARGE I

**Peavey was injured beyond AR 40-501 Para 3.23 while in the US Army an denied proper medical care, subjected to assault and battery and his US Army Health Records and OMPF were altered, substituted and or destroyed [in part] to cover up US Army violations of Peavey substantial rights to due Process in violation of 5th USCA. US Army is the legal custodian of Peavey records and has acted with VA and NPRC to tampered and premature destroyed various US Army Health Records and OMPF to continue the cover-up. These acts violate Peavey's rights that exist under §10 APA 5 USC §§552, 702, 706; 10 USC§1552(a) and 5USCA.**

Factual Account:

1.      Peavey enlisted in US Army July 24, 64  PULSE 11111 with no injuries, disease or congenial disorders. Plaintiff blood pressure upon enlistment was 130/70. Peavey AFOT Score was 58 and  GT 127. Peavey was struck as a pedestrian by an auto 9/17/66. Plaintiff was hospitalized 7 days and US Army issued medical profiles "3P" with codes U and D to plaintiff on 4 Oct 66 and 24 Oct 66. Plaintiff was prescribed anti-hypertensive meds for more than three months. Plaintiff went on repeated sick call, and 30 days convalesces leave through 18 Dec 66. 16 December 66 plaintiff's conduct and performance was rated excellent at pay grade Sp4/E4; No disciplinary infractions existed in plaintiff's 201 file at that time. Peavey return from 30 days covalence  leave ended 90 days trial period pursuant to AR 40-501 Para 3.23 after being struck by the automobile. On 22 December 66 Dr. Henry Wise examined plaintiff and noted 154/112 blood pressure writing "compensation case" in Peavey US Army Health records.

2.      24 hours later Dr. Lafallet diagnosis finds Peavey FIT FOR FULL DUTY.  Dr. Lafallet order is prejudicial and tantamount to malpractice and incompetence and life threatening because he admit being in Peavey's arms during the examination.  US Army command followed Dr. Lafallet 23 Dec 66 by ordering KP and policing 30 miles of road while  Peavey  re-assignment to non-airborne unit in an administrative MOS 23 Dec 66 through 5 Jan 67.   Peavey was refused all mediations [including anti-hypertensive meds] except aspirins.  Peavey experienced severe backaches, headaches, fainting and memory loses. Peavey went AWOL seeking proper medical care January 5, 1967.

3.      After Dr. Lafallet 23 Dec 67 unorthodox examinations, 4 Jan 67 entry are unsigned but indicate "Dr. Lafallet's comments are certainly to be heeded" erroneously noting "His L3 profile will be changed to 1. It should be noted that Peavey did not have a L3 profile but a P3 profile with possible kidney injury and refractory hypertension diastolic over 110. No blood pressure was recorded during the 4 Jan 67 medical examination. Peavey never held the L3 profile.

4.      A profile containing one or more numerical designators of "3" signifies that the individual has one or more medical conditions or physical defects that may require significant limitations. Peavey assignments were not commensurate with his physical capability for military duty as required by 40-501 Standards of Medical Fitness 7-3. **AR 40-401 Standards of Medical Fitness** [11 March 66] Para. 3-26 (a), (b).

*11*

5.      When he returned from AWOL Peavey demanded a Special Court Martial with a medical Board [MEB]. Unit commander processed the Summary Courts Martial January 23, 1967 prior to any MEB and reduced Peavey from Sp4/E4 to Pvt. E2 and forfeit 2/3 pay.   No other punishment was adjudged in the Summary Court Martial.

6.      Peavey was denied the special court martial with MEB. 30 January 66 a new high blood pressure profile was issued to replace the 4 Oct 66 3P high blood and 24 Oct 66 D and U profile. 30 Jan 67 a Certificate of Unsuitability (COU) was approved although Peavey had no disciplinary record other than the 23 Jan 67 Court martial which had been ordered for the 11 day AWOL. The Unit 23 Jan 66 Summary Court Martial was decided as Peavey demand for Special Court with MEB was denied therefore the administrative actions did not consider the rights which Peavey had under AR 40-501 and UCMJ.   Peavey was not given the Spec Court with MEB (which Peavey had a right to under AR 40-501 par. 3-3 and 3-3 (b)].

7.      Dr. Wise, Peavey primary physician, 17 Jan 67 discusses Peavey pain and possibilities of it originating from cardio-renal injury and note Peavey might be before Special Court Martial. 30 Jan 67 Dr. Rapheal  DiNapoli say "This dates back to Sept 66 when allegedly struck by car." Dr. Raphael also note Peavey was angry because he was not allowed to pursue the Special Court martial with MEB.

8.      The US Army medical records show Peavey's persistent complaints of severe pain in right flank and lower back and high blood pressure with diastolic over 110 with evidence of possible injury to cardio-renal.  On January 31, 1967 Dr. Jackson medical review ruled out Dr. Wise suggested diagnosis of cardio-renal disease while affirming Dr. Wise finding of heart murmur; bruit in abdomen; narrowing of retinal arteries. Dr. Jackson report does not associate these abnormalities with any trauma, injury or disease erroneously rules the IVP was normal. Dr. Jackson report ignored the fact that plaintiff suffered trauma from being struck by an automobile 9/17/66.   Dr. Jackson diagnoses liable hypertension.

9.      The medical records contain three orders for IVP. One is dated 20 Sept. 66 by Dr. Wise. 26 Sept. 66 has an authentic signature of Dr. Jackson the other show date of request 29 Sept. 66 without an authenticating signature.  The radiologist report is provided for the 29 Sept. 66 IVP indicating double collecting system.

10.     The Summary Court Martial lacks the jurisdiction to order a military discharge or COU. The punishment listed in the Summary decision did not include a certificate of unsuitability [COU]. Having denied the special court martial and MEB,  the US Army processed a Certificate of Unsuitability acquiring approval of various military commanders beginning 30 January 67 effectively approved by JAG 7 February 67.

11.     Lt. Shaw's notice of COU indicates that plaintiff was shirking duties.  He does not indicate any facts about plaintiff being struck as a pedestrian by an automobile 9/17/66. Lt. Shaw does no show time of AWOL,  repeated medical treatments [i.e. sick call repeated, 7 days hospitalization, 30 days covalence leave] and Peavey was beyond AR 40-501 because of refractory hypertension, and evidence of heart involvement and injury to KUB. Shaw does or provides any comment about Peavey physical fitness to serve.   The COU violates plaintiff's rights because he was not suitable for retention under AR 40-501 Para 3.23. The COU indicated that as of 7 February 67 JAG approved Peavey unfitness for further military enlistment or reenlistment.  Peavey was not released from the US Army neither provided proper medical treatment while being held and deemed unsuitable [23 Dec 66 through 5 Aug 1967].

*/2*

12.     On April 4, 1967 Peavey was physically assaulted by a squad of Caucasian soldiers under the command of NCO Sgt. Richard Walston.  Peavey medical records were taken from him and Plaintiff's sister, Mamie A. Horne, complained to her congressman Frank Brassco.

13.     On April 19, 1967 General Kimbrell notified Congressman Frank Brassco that Peavey was fit for full duty (as far as the back was concern) citing Dr. Lafallet's 23 Dec 66 report and the record show that Peavey was charged with AWOL from KP which would indicate that his unit was still assigning KP and other records indicate that he was assigned as an ammo bearer for artillery.  This is contradicted by subsequent VA treatments and records.

14.     Other records and orders  show On 29 Dec 66 Orders were cut reassigning Peavey to USATC (3155-03) under the MOS 71H10 [Administrative Clerk]. He had no training in this MOS. Other orders show MOS changed to 70A10 on March 11, 67. He is "reassignment of permanently physically disqualified parachutist" by Capt. Maloney. On 19 Dec 66 per Capt Wise "Pt. complains of back pain. He has already been placed on a permanent profile for this.   Pt. Profiles and 1049 have all been sent forward.  Bp 154/112 (rt. arm sitting maybe it time for an arteriogram).  On 21 Dec 66 orders were cut supporting these personnel action

15.     Peavey still held profiles restricting him from strenuous physical activities; AR 31 and 32 investigations were required for all charges and infractions under the appropriate legal jurisdictions.  An estranged document show AR 32 proceeding began for June 16, 1967 special Court Martial on May 24, 1967.  The US Army shows AR 15 for alleged AWOL on May 24, 1967 and special court martial for charges and specifications of assault on a non commission officer on April 4, 1967.  US Army tried the April 4, 1967 charges on June 16, 1967.  The US Army placed an AR 15 in plaintiff 201 file showing AWOL 24, 1967 was never included in the charges and specifications in the Special Court Martial. NPRC provided no copies of AR 32 investigations or CID reports or any board hearing support a Certificate of Unsuitability.

16.     US Army suppress Sgt.  Walson order given to 8-12 soldiers to arrest Peavey on 4 April 67 contained on extraneous pg from transcript showing Pfc. Alan D. Lafountain for prosecution...17 Jun 67 AJBCA-Z-CO.  No other pages of that transcript are provided.

17.     The extraneous document contain a. 9 May 67 statement of incidents of 4 Apr 67 ...received call from IG complain he had not been permitted to prefer charges against NCO for assault; c. 24 May 67 charges were submitted to AR-32 investigation officer (24 May 1967 show that AR – 15 was placed in Peavey OMPF file indicating he would not report to KP...Gen Kimbrell to Cong. Brassco on 19 Apr 67 "Prior to August 1966 character of Peavey's service was excellent...since that time he was...constant trouble maker...since he was involved in an accident...as far as the back is concern Peavey is fit for full duty..."  Peavey was provided an army medical record which does not show any medical treatment for even essential high blood pressure...even when being seen by a doctor no blood pressure was taken between 2/1/67 and August 5/1967...his discharge show bp 140/110.

18.     The medical records and morning reports contradict General Kimbrell account.  On August 3, 2005, Mr. Levine Deputy Director of Military Records for NARA provides a morning report showing Peavey was on convalescence leave 18 Nov 66 through 18 Dec 66.  Peavey US Army Health records show repeated sick call after discharge from WAH on 4 October 66 through 18 Nov 66 with numerous test ordered during the period with numerous x-rays and acknowledge of injuries to his lower torso and suspected cardio-renal injuries. No records have been provided by the US Army showing a record or Peavey as trouble maker.

*13*

19.     General Kimbrell 19 April 67 Tel-X indicate Peavey was a trouble maker and the 4 April 66 dispensary report show Peavey brought in chains for aggressive action but the US Army refuse to provide a transcript of the first Special Court Martial Proceedings held June 17, 1967. An extraneous document from the 16 June 67 Special Court Martial proceeding indicate the 4 April 67 incident was not discovered until Peavey complain to IG about being refused his right to charge NCO for the physical attacks. The estrange document show May 9, 1967 as the date of discovery. It is clear that the dispensary doctor knew 4 April 67 and General Kimbrell knew 19 April 67. These facts contradict the estranged document account. The same estranged document show AR 32 investigation begins 24 May 67. No records show when Peavey was taken into custody. Peavey indicates that he was falsely imprisoned after being physically assaulted 4 April 67. His US Army Health Records show he was brought in chains on 4 April 67.

**20.     US Army the Summary Court Martial lacks the jurisdiction to order a military discharge.** The punishment listed does not include a certificate of unsuitability which is not supported by any AR 31 report or 32 investigations or records of a board which are required by US Army regulations. The certificate of Unsuitability violates plaintiff's rights because plaintiff was not suitable for retention under AR 40-501. US Army OMPF show AR 15 dated April 13, 1967 and AWOL May 24, 1967 which is contradicted by all other records. **The summary court martial** in this case did not follow the required UMCJ procedures.

21.     If Peavey was unsuitable for further military service he was not discharged due to the Certificate 30 January 67 or after JAG approval of COU 7 February 67. Peavey records show only the one AWOL [5 Jan 67] prior to the issue of the COU. The subsequent AR 15 are unsupported by any records or morning reports and what documents exist in the records contradict the AR 15 existence. The facts that Peavey records contain AR 15 for AWOL March 27-29 while being treated at WAH March 30 and no morning report show Peavey as Prison transfer from Ft. Hamilton, NY to Ft. Bragg, NC.

22.     The Dispensary document does not indicate Peavey was in custody on March 30, 1967 just that he was seen in an emergency situation and told to report to Dispensary in the a.m. The AR-15 document show Peavey was AWOL turning him self into MP at Ft. Hamilton, NY does not indicate his transfer back from NY to Ft. Bragg, NC...It does not indicate his whereabouts from being returned to Ft. Bragg, NC between March 29, 1967 through 4 April 67 when he is attacked by soldiers brought under Sgt. Walton authority on 4 April 67 and his medical records taken from him.

23.     The records show that Peavey was walking across the parade field and not in any custody when accosted and attacked and his health records taken on 4 April 67. Peavey appears in chains 4 April 67 at Post Dispensary after being attack by soldiers under Sgt Walston authority. The US Army records does not provide transcript of the Special Courts Martial held on or about June 17, 1967 however two estranged pages of the transcript show Peavey medical records were taken from him during the attack.     Medical records show that Peavey was examined for AR 635-212 discharge on May 30, 1967.   The suppression of medical records is clear because COU as well and the courts martial and General Kimbrell Tel-X message dated 19 April 67 avoid the specific records to prove Peavey "fit for full duty".

24.     Peavey alleged that he was falsely imprisoned after the 4 April 67 attack and not allowed to submit charges against Sergeant Walston for instigating the attack. The US Army provide no information showing what the Sergeant did with Peavey Medical Records once they

*14*

were taken from him or how Peavey was secured after he was brought in chains on 4 April 67. The record show Peavey was tried twice for the 4 April 67 events instigated by Sgt. Richard Walston but there is no investigative record to support the June 17, 1967 trial and only two pages of transcript which does not provide statements of Peavey retentions from 4 April 67 through 17 June 67.

25.     Peavey held "3P" profile but his medical records does not show any blood pressure readings from 31 Jan 67 through 5 August 67. Peavey was not provided proper treatment after 23 January 67 where Dr. Lafallet commands mandatory PT and discontinuance of Peavey Medications. Peavey discharge blood pressure was 140/110 and on 18 September 67 VA read his blood pressure as 240/120 which is material and significant given a blood pressure of 180/120 on 20 September 66 three days after the accident and 154/112 on 22 Dec 66 after 90 days trial pursuant to AR 40-501 Para 3.23. The US Army Board of Corrections and the US Congress have been provided adequate record which shows plaintiff injuries were beyond AR 40-501 Para 3.23. Dr. Jackson's misdiagnosis of essential hypertension ignores all trauma and injury to plaintiff's KUB. All medical records sufficiently establish plaintiff was beyond the standards of 40-501 because any hypertension coupled with either heart of kidney dysfunction renders an individual beyond the standard of fitness.

26.     "The purpose of a discharge certificate is to record the separation of an individual from the military service and to specify the character of service rendered during the period covered by the discharge." "Because the type of discharge may significantly influence the individual's civilian rights and eligibility for benefits provided by law, it is essential that all pertinent factors be considered so that the type of discharge will reflect accurately the nature of service rendered which requires that the findings of the Army Review Board "shall be based upon all available records of the [Army] relating to the person requesting such review"; the word "records" means records of military service.

**27.     The Army's actions did not comply with the procedures** established in Army Regulation under AR 40-501; [AR] 635-200 for discretionary "convenience discharges" and AR 635-212 for discharges based on misconduct alleging under pretext "convenience discharge" while retaining complainant on active duty and subjecting him to assault, these actions contravened his right to due process of law, and denying applicable regulations and "minimum concepts of fairness."

28.     Peavey filed for injunctive relief affirming "Plaintiff has filed administrative complaints with department heads: VA, NPRC, IRS, US ARMY, and USDOJ informing agencies of various civil and criminal violations by its employees. See Id. Doc-22-2; Doc-11.

29.     The latest administrative applications has been filed with ABCMR on November 3, 2010 and assigned the management number (AR201000027325.) Peavey filed affidavits of injunctive and declaratory relief for the facts and records as early as 12/12/05. VA is consistently allowed to obstruct access to US Army records. See Id  Doc 48 pg. 19 ¶ 49-51.

30.     Peavey filed complaints with Secretaries of US Army Peter Geren, McHuges; Secretaries Nichols; Principi; and E. Sheskni, Secretary of Veterans Affairs; Adrienne Thomas NARA Archivist seeking authentic copies of his US Army records. Peavey complaint allege a cover-up offering proof supporting his claim "VA began altering, destroying historical records and confiscated ID card (1993) and attempted to change his old claim number to, his Social Security number. VA denied he (sic) Peavey ever received disability. US congress investigated and VA re-examine him. VA placed false report; in file to distort the chronic nature of my heart disease. The insertion of Dr. Kopha's report dated 9/5/95 was a fraud and misrepresentation with intent to deceive." Case 1:05-cv-00819-RWR Document 1 pg. 14¶

*15*

68.

31.     Peavey has a right to ABCMR review of his US Army records due to his timely application filed under 10 USC § 1552(a). Defendant US Army the legal custodian of Peavey US Army Records has taken no action as appointed custodians (sic)( VA and NPRC) have refused to release the records at all times material. US Army was named but not served in the original petition leaving the Secretary free to act without judicial restraints. No Secretary of the US Army has acted within his authority in the interest of justice to correct the misconduct of his agents in this case even after discovery his Major was wrong.

GHARGE II

**VA AND NPRC ARE US ARMY RECORDS CUSTODIAN the agencies have acted to suppress, alter, and destroy [Parts of] Peavey US Army records;   VA has used 38 § 511 to obstruct access to Peavey US Army Health Records and VA records showing cardio-renal injury;   VA and NPRC engaged in fraud to create false records to replace Peavey Original VA records which showed cardio-renal injury or disease violating §10APA 5USC § 706 denying Peavey access pursuant to FOIA;  VA and NPRC acts deprived Peavey of various protected rights to maintain correct records and has deprived his right existing under 10 USC § 1552 by denying ABCMR access to his US Army records and early VA records.**

**32.     VA and NPRC VA admit custodial authority over US Military medical records.** Plaintiff has been sent copies of US Army medical records from VA with alterations, IVP radiological report for 26 September 66 has not been provided [a typed one showing ordered 29 September 66 was provided]. VA acted to suppress, alter, and deny access to records from it MIS 136 files contained by VA Hospital inpatient treatment of plaintiff [1/26/68-3/4/68] and VA EO VAMC and MIA VAMC 1993-1995. VA suppress the history and etiology of Plaintiff's diagnosis, treatments and ratings and VA arbitrary discontinued Plaintiff's benefits while erroneously alleging plaintiff was dead. VA arbitrary "taking" continued for five months

33.     .VA suppressed various US Army records showing hypertension coupled with heart and kidney impairments. 32 C.F.R. § 581.2(a)(1) (1973). Established pursuant to 10 U.S.C. § 1552 (1970) and 32 C.F.R. § 581.2, the Army Board for Correction of Military Records [ABCMR] is to "consider all applications properly before it for the purpose of determining the existence of an error or injustice," 32 C.F.R. § 581.3(b)(2) (1973), and may "correct any military record . . . to correct an error or remove an injustice." 10 U.S.C. § 1552(a).

34.     Application for correction was filed May 9, 1968 within the statute of limitation citing in part the following law and the records show that VA continued to suppress medical records obscuring KUB impairment. VA does not provide the audit report to show which federal agencies were provided UNCLAS/136/Peavey, Morris J. Jr. report dated July 25, 68 with Dr. Paulson erroneous summary attached.  Mr. Juliano January 20, 2006 submission was continuously suppressed as it is today.

35.     VA OBSTRUCTION OF JUSTICE: VA use the MIS 136 file to track continued deterioration of Peavey medical condition and VA and NPRC act 1993 to create a brill attempting to destroy the original VA file engaging in intentional fraud.

36. 1993-1995 NPRC admit Peavey VA claim was filed with VA August 1, 1967 when Peavey was being discharged from the US Army evident by DA 644 in his OMPF. Mr. Levine deputy director of military records NARA admit 5-12-93 VARO 317 St. Petersburg request Peavey DD 214. This submission ignore Peavey original claim. VA confiscated Peavey old VA Disability ID and establishes a brill and attempt to replace Peavey original VA disability files. The VA December 4, 1995 rating indicated the right flank pain ...the rating report show the Evidence as VA outpatient treatment reports from Brooklyn NY dated 2-2-68 and 2-26-68 totally deliberately misrepresenting the inpatient hospitalization 1-26-68 through 3-4-68.

37. The VA rating issued December 4, 1995 show this continued attempt to destroy the earlier medical history from the US Army records and the early VA medical treatment related to Peavey KUB and IVP abnormality. The finding of 240/120 bp show the continued high blood at 120 or above...apex beyond mid-clavicles...mitral murmur...it does not cite ankle edema however the actual records show ankle edema...congestive heart failure...suspected coronary artery disease. However, the rating report does not provide the history of the development of the congestive heart failure and completely deny the kidney injury...noting the following mis-representation: "There is no record of kidney disease showing a chronic disability subject to service connection...service records show on 1/31/67, that there was no evidence of renal vascular disease. An IVP show the veteran has a double collecting system...Renal injury secondary to his back trauma was ruled out...chronic renal disease was ruled out...He was seen by VA Hospital, Brooklyn NY in February 1968, after service discharge on 8-5-67...an IVP and renal-gram were normal with no disease found. This false statement was maintained throughout.

38. 317 VARO Terminated all Peavey entitled benefits alleging he was dead [effectively March 1, 2001] notifying Peavey's family on or about March 29, 2001. Peavey notified VA he was not dead after his wire transfer was not deposited and VA did not restore Peavey benefits and he contacted 317 VARO and also Congresswoman Carrie Meeks. VA did not restore Peavey benefits until July 26, 2001. These acts clearly violate Peavey Constitutional rights to entitled benefits. Deprivation without due process is a constitutional violation which is not protected by VA jurisdiction existing under 38 USC § 511. VA continued use of this statute to deny Peavey access to his records is a substantial violation of 5th USCA and §10 APA. VA taking of Peavey entitle benefits is clearly a violation of his constitutional rights. The US District Court has concurrent jurisdiction with Federal Court of Claims pursuant to USTCA 1346.

39. Peavey filed administrative complaints charging taking 9/10/02 and VA threaten to discontinue Peavey benefits again indicating that the US Postal Service notified VA that Peavey had changed address. VA again discontinued Peavey compensation May 1, 2003 through June 30, 2003 alleging VA was recouping an overpayment. VA disregarded Peavey medical condition which was rated 7007 60% hypertensive cardio vascular disease [with CHF] at the time since 1994. VA acts were deliberate abuse of process to intimidate and harass Peavey.

40. Peavey made every administrative effort to acquire his complete US Army medical records and early VA Medical records from the records custodians VA and NPRC. After he suffered arbitrarily takings by VA in 2001-2003 Peavey went to court. It is clear that VA believe its 38 USC §511 jurisdiction allowed it to violate Peavey constitutionally protected rights with impunity given that VA and NPRC were required to submit copies of records pursuant to Peavey filing May 9, 1968 DA 149 assigned (AGUZ-SMP-SAC Peavey 12701916) but refused;

ABCMR May 18, 2006 assigned (AR 20060007403) was returned due to ABCMR claim that the physical custodian NPRC show the records charged out (it should be noted that NPRC show the records charged out to VA (1993-2001); two other DA form 149 were complete 2008; 2010 numbered AR 20100022065 ( other assigned numbers not readily available). See US District Court or District of Columbia Peavey v. Gonzales 1:05 cv 0819 RWR Doc-42-1-3 motion for US Army to Certify its Record.

41.     Peavey filed for injunctive relief affirming "Plaintiff has filed administrative complaints with department heads: VA, NPRC, IRS, US ARMY, and USDOJ informing agencies of various civil and criminal violations by its employees. See Doc-22-2; Doc-11. As soon as the Defendants are out of view of the Court it act to deny the existence for Peavey records and refuse to provide them to ABCMR. ABCMR refuse to accept any records submitted by Peavey.

42.     On January 20, 2006 Mr. Juliano release medical records from VA hospital supporting every statement made by Peavey showing KUB injury and or disease. These findings coupled with hypertension show that Peavey was beyond AR 40-401.

43.     Plaintiff suffered incapacitation due to MI September 16, 2005. Plaintiff moved this court pursuant to 5 USC §§552, 706G for the VA records and VA Brooklyn Hospital records were provided January 20, 2006. And this court refused to grant Doc-10 motion to order defendants to authenticate their records submissions. ABCMR provided records showing that VA and NPRC refused to provide official records therefore it could not process Peavey application for correction of his military records. The present refusal of VA to release authentic copies of the records to ABCMR are a continuous tort which began May 9, 1968 and is not controlled by 38 USC § 511 but clearly violates 10 USC § 1552; 5 USC §552 and §10 APA:

44.     Administrative remedy is futile because VA continually use 38 USC § 511 to obstruct Justice by creating a ruse to make it appear that first Peavey was never in-patient (but two days OPC) VA hospital Brooklyn from 1/26/68 through 3/4/68. VA took this action to continue cover-up evidence of cardio-renal injury and or disease shown five month after Peavey discharge from US Army. VA suppress Peavey US Army records acting as the custodian and ABCMR indicated records were insufficient to decide Peavey 10 USC § 1552(a) claim May 9, 1968. VA submit UNCLAS /136/Peavey, Morris J. Jr. on July 25, 1968 which had an erroneous summary of the hospital stay by Dr. Paulson and have not provided Peavey FOIA request for audit report showing the agencies who was sent the erroneous report.

45.     Peavey moved the court for injunction Doc-22 demanding records of VA hospitalization. Mr. Juliano provided 1968 VA Hospital records on January 20, 2006. Peavey filed again with ABCMR on or about May 18, 2006. ABCMR indicate it required records from the official custodian of records or a complete file to complete Peavey application for correction of his military records. Peavey motion for authenticate records Doc-10 was pending in US District Court for D. C. 05 CV 00819 RWR and he moved for a mandate. Peavey had rights to the production of records by official custodians and notified Secretaries of VA and US Army of agents' misconducts. March 21, 2011 ABCMR indicate that the official custodians VA and NPRC have not provided any records therefore and closed Peavey application without prejudice. There is no excuse for the VA and NPRC refusal to submit official records to ABCMR.

46.     Peavey submitted an abstract of material records to VA for authentication on August 19, 2010 to submit. ABCMR provided Senator Bill Nelson office with information showing that US Army could not correct their error and the false statements given to Congressman Brassco in

*18*

1967 due to a lack of records.   US Army could no longer support its statement that Peavey was fit for full duty:

a)   Mr. Juliano January 20, 2006 release of VA records showing VA suppressed cardio-renal injury and or disease seen upon Peavey discharge from US Army.

b)   VA refused to authenticate Mr. Juliano records release and refused to release official US Army Health records to ABCMR but attempt to show Peavey Historical treatment as essential hypertension changing his medical history from 7007 60% Hypertension cardio Vascular Disease to 7001 60% hypertension.    BVA provided two Docket numbers 09-13-777 and 08-18-888 and indicated that his claim was remanded to VARO 317 due to a molicon issue August 20, 2010.

c)   VARO 317 and BVA refuse to provide any authentication for the records and continue to show false medical evaluations continuing the false records which were established by VA using the 1993 replacement records concocted by VA and NPRC. VA act to destroy the History and etiology of Peavey medical condition.  Peavey was never rated for essential Hypertension 7001 but for hypertensive heart disease 7007 and in 1993-1995 granted 60% 7007 and this rating remained.  Peavey presented records to this court showing he was hospitalized for MI with LEVH of 40% 2005 and ACS and Bradycardia in 2006 prior during the period Mr. Juliano released 1968 VA hospital records.

47.      Peavey filed timely complaints with Secretaries of US Army Peter Geren, McHuges; Secretaries Nichols; Principi; and E. Sheskni, Secretary of Veterans Affairs; Adrienne Thomas NARA Archivist seeking authentic copies of his US Army records. The complaints claim agents misconduct over the period which he sought administrative relief. Peavey latest  submission to VARO 317 August 20, 2010 was a copy of an abstract to containing Mr. Juliano January 20, 2006 for authentication. On October 20, 2010 a copy was submitted to E. Sheskni, Secretary of VA. Mr. Klaus P. Schumann March 22, 2011 returned all documents indicating "We requested a copy of your military records as stated in previous correspondence from the National Archieves and Records Administration without success. It is impossible for the Board to make a decision in your case without this document. In view of the foregoing, your attached documents are returned without action and without prejudice.  You may reapply once you obtain the aforementioned documents."

48.      The latest administrative applications has been filed with ABCMR on November 3, 2010 and assigned the management number (AR201000027325.)  Peavey filed affidavits of injunctive and declaratory relief for the facts and records as early as 12/12/05. VA is consistently allowed to obstruct access to US Army records. See Doc 48 pg. 19 ¶ 49-51.

49.      Juliano denied the existent of Peavey VA hosp records on 30-03-03.   VA denied the existence of  inpatient hospitalization until January 20, 2006 facing a motion for injunction pursuant to 5 USC sec 552.  Peavey's VA 1968 hospitalization show that VA continued to deliberate misrepresent Peavey hospital treatment and the finding of abnormal IVP...after producing these records to avoid a motion of injunction today VA refuse to authenticate the US Army records or the early VA records which Mr. Juliano provided.  ABCMR indicate that they have not received any authentic records from US Army records custodians.   VA entered the US District Court using 38 USC sec 511 to deny access to authentic records. ABCMR refuse Peavey

19

submission of records which he acquired from VA and NPRC. ABCMR indicate that authentic records could not be found for the 1968...2006...2008 and 2010.

50.      NPRC admit VA is an official custodian of the Plaintiff physical US Army Medical files effectively August 1, 1967 after this matter came to court. Cynthia Stock for the VA indicating that VA was a depository for Plaintiff US Military medical records;  NPRC is the physical custodian for Plaintiff OMPF [Official Military Personnel File]; US Army is the legal custodian for all of Plaintiff military records. Defendants further provide in their Doc-8 and affidavits allegations that Peavey had been provided all of the records which Peavey had requested from their files as of 8/3/05 (Doc-8 pg.23).   VA Hospital records Brooklyn 1968 (id. pg.24), VAEO Hospital Center 1993 and various US Army records showing abnormal IVP 9/26/66 were knowingly being suppressed. NPRC represent in its affidavits that previous claims that various disciplinary records, investigative records [AR 31, 32, CID, and Congressional investigative files] could not be located   (Doc-8 pg 20-21).

51.      VA engaged in these abuses of process although there are written guide lines under 38 USC §511 which instruct ratings and classifications. Peavey complained about Mr. CB Gibbard's violations of federal law  to USDOJ and the secretary of VA. The matter was simply sent back to Mr. Gibbard at VARO 317. The VA have Directive 633 for dispensing  records request from other agencies  ABCMR indicate it can not get the records from an official custodian for 43 years.  VA does not have a discretionary function over Peavey 10 USC § 1552 rights. This is an administrative taking because it deprives Peavey of the right to have his records showing his actual US Army achievements and injuries. 5 USC § 552 a (g)  (1) (C).  Administrative requests are futile.

52.      Defendant, VA, intentional acts of fraud and illegal destruction of both US Army and VA medical records cover-up medical evidence showing Peavey was beyond AR 40-501 and denied proper medical treatments; by acting in concert with NPRC and the US Army to deny Peavey and ABCMR access to certified medical records necessary for him to proceed before the ABCMR from 1968 to the present.  The Defendant SOC 6/29/05 submission to this court argue lack of subject matter jurisdiction. VA had no intention of processing the SOC which it submitted to this court and has providing misleading and false information showing that plaintiff claim as strictly a VA benefit claim.

53.      Plaintiff 14 provided the Court that Defendants were not acting in good faith and various documents were still being suppressed by defendants related to injuries and treatments for injuries to his KUB.  Defendants were willfully acting to continue to suppress VA HOSP. BRLKYN Records and congressional inquiries. Defendants 15 move the court for extension to reply to Plaintiff 14. The court granted defendants unprecedented amount of time to respond to Plaintiff 14  which was filed with the court 8/18/05. Plaintiff 18 Notified the Court of incapacitation due to hospitalization due to MI, Sepsis, dysfunction of Kidney, and pneumonia on 9/21/05 and on 12/07/05 Defendants had not entered its response to Plaintiff 14.  It should be noted that the mater was a VA/US Army custodial issue not controlled by VJE or any component of 38 USC § 511.

54.      Defendants VA continue to provide various inconsistent and clearly erroneous statements to deny the facts related to Plaintiff injuries show an abnormal IVP and the associated diagnosis by certified VA and Private doctors.  NPRC continued to refuse to produce any certified OMPF records re: disciplinary actions necessary to support a certificate of unsuitability and 3B bar which the US Army entered into Plaintiff's Military record.  The Plaintiff filed DD 149 2008 with insufficient authentic records for ABCMR to make a decision. See Doc-41.

55.      Plaintiff filed with ABCMR again because Defendants indicated to this Court that Plaintiff had not exhausted administrative remedies and submitted Plaintiff a DD Form 149.  Plaintiff 41 Motion for order to certify record provided the court with facts showing that Peavey again submitted

application to ACBMR and that the action required that he provide certified documents of US Army medical records from the NARA and VA system of records. Court records indicate that plaintiff had submitted the best evidence which he had and have requested these records before this Court, requested show cause why the defendants refuse to comply to injunctions to force the defendants to act according to the laws under 5 USC §§ 552 ; 706G and § 10 APA.


CHARGE III


**VA and NPRC act in tandem with other federal agencies 1993-1995; 2001-2003 to engage in reprisal discrimination against Peavey. IRS placed erroneous levies and liens on Peavey's clients properties 1990-1994 and Peavey's property through 2001; These actions dove-tail 1993-1995 VA and NPRC actions creating brill to destroy Peavey's original claim file and VA 2001 actions of sending Peavey family a fictitious notice of his death and discontinuing his Entitled VA benefits for five months not withstanding the fact that he suffered from chronic CHF during the period of the TAKING. These acts of misconduct violate Peavey rights existing under substantial due process [5th USCA].**

56.     IRS engaged in reprisal discrimination against Peavey and clients causing loses of business and private properties due to IRS abuse of its collection and enforcement statues.

57.     Morris J. Peavey, Jr. prepared Mamie A Horne's 1985-1987 tax returns. Peavey alleged defendant IRS placed an erroneous lien on Horne property...IRS had intentionally and knowingly provided false information to execute the lien and deprived Plaintiffs Horne and Ingram of the fair housing rights which they had under federal statutes. IRS was prohibited from placing the lien on Horne property because IRS had entered a closing agreement with Horne for the period of the lien and was estoppels by 26 USC §§ 7121 and 7214.

58.     Karla Owens attorney for Dade City provided the court false information indicating Mamie A. Horne had not lived in Dade City and that she had not filed any special zoning exception and Peavey provided Doc-42 which showed Karla Owens representation were false. Magistrate Judge Dube was taken from the case and replaced with Magistrate Brown who accepted Karla Owens false statements and refused to enter the material facts which clearly impeached Karla Owens. Horne move to enjoin Peavey Doc-56 and Judge Brown denied the motion and recommended the court dismiss Horne's amended complaint against City of Dade City with prejudice.

59.     Defendant IRS remained silent when Karla Owens made her false statements to the Court and when George Rogmanoli entered the order obtained by the false statement in US District Court for the Middle District of Florida [Morris J. Peavey, Jr. v. Scott Black Mayor 08-09-civ 01975 JSM/AEP  filed 09-29-09] seeking dismissal due to res-judicata. IRS has knowingly engaged in harassment and reprisal against Morris J. Peavey, Jr. earlier (1983-2003) because Peavey had assisted Horne against USDOJ in her claim of discrimination. See US District Court Southern District of Florida 08: civ-022334-CMA filed Mamie A. Horne v. OPM and SSA retaliatory discrimination complaint.

60.     IRS harassment dovetails VA and NPRC attempts to destroy Peavey US Army files 1993 and VA fraud 1995. These agency actions were in concert through 2003 and when the agencies came to court the USDOJ defended their actions and assisted in a fraud upon the court by

remaining silent, defending the Biven acts against Peavey, and seeking stays in discovery using ex-parte actions to defend the defendants fraudulent actions which violate Peavey substantial rights to due process and equal protection.

61.   The United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States the United States can be sued in a tort action where the tort fester has destroyed federal records, engaged in malpractice, engaged in Biven actions, engaged in takings under color of law as in this case. Peavey has concurrent standing before this court and before the US Court of Claims.

62.   VA and NPRC, record custodians of Peavey US Army Records continued their Biven actions against Peavey beyond 1995 through 2001-2003 suppressing federal files and continuing to alter and attempt to destroy all files related to medical findings of cardio-renal injury and or disease.

63.   The abstract of material records provided key documents which were in Peavey possession showing that the US Army and VA were continually providing false statements of historical medical facts to congress and refusing ABCMR the historical records while using 38 USC§ 511 to obstruct access to the records:

   a) VA attempt to record what is shown in their records as [60% hypertensive heart disease 7007 with etiology from 1967] as zero in the face of the periods of hospitalization showing the acute phase of the disease 2005-2006 in not a molicon issue but continuation of the fraud. Jennifer Kaldor DORD provides 30% after review and she is later named FOIA Officer.

   b) VA had not released the VA hospital records because VA acting as US Army records custodian was proactively engaged in suppressing, altering and destroying records which show cardio-renal injury and or disease. The abstract of material records clearly provide this fact.

   c) BVA and Secretary of VA was submitted the abstract on 18 August 2010 and BVA returned Peavey file to VARO 317 on August 20, 2010 [ 25 August 2010 VARO 317 indicate the file was still with BVA].  BVA has provided information indicating two different numbers but refuse to provide Peavey with Dockets, the BVA statement of finding of facts and decisions but has provided a statement of partial remand with a partial decision indicating the hydrocele is not service connected. BVA constantly refer back to Jennifer Kaldor who had not provided any information about remand.

   d) VARO  317 refuse to provide any status report for the remand but continue to sit on the records after nine months engaged in an issue which clearly show that the statement was  fraud use to continue the cover-up. The material record showing VA persistent attempt to suppress and destroy these federal documents were submitted to US Court of Appeal for District of Columbia  Case No. 5389.

64.   VA and NPRC acted in an "intentional or willful" manner in failing to maintain accurate records, the district court may award actual damages sustained by the individual as a result of an adverse determination based upon such records. § 552a(g)(4)(A) & (B). Exhaustion of administrative remedies is not a precondition to bringing an action for damages under the Privacy Act.  In this case the defendants continually engage in willful misconduct first hiding

material hospital records and now that Mr. Juliano produced those records VA act again to refuse access to the records by refusing to produce ABCMR official records.

65.    The court have the tools within the law to force the records Under the Privacy Act of 1974, 5 U.S.C. § 552a (1982), every federal agency is obligated to ensure that information compiled in individuals' records, such as personnel evaluations, is accurate, relevant, timely, and complete. § 552a(e)(5). An individual demonstrating that an agency has failed to meet this obligation may obtain declaratory relief ordering the record to be amended, §§ 552a(g)(1)(A), (g)(2)(A) & (B), and may recover actual damages resulting from an adverse determination based on such records, § 552a(g)(1)(C), (g)(4)(A) & (B).

66.    The Court have the tools within the law to force the records under §10 APA 5 USC §§702; 706. Since these records are continually said not to exist the Court have the authority to issue its declaratory judgment on existing records which Peavey have provided.

CHARGE IV

**IRS; USDOJ; VA & NPRC deprive Peavey of Administrative remedy allowing continuous torts through federal agents continued misconduct. The federal agents violate Peavey's constitutional rights existing under 5th USCA by deprive Peavey of property without due process and in violation of §10 APA. VA denied Peavey access to VA medical records and making agreements with private doctors that they could not provide medical records to Peavey (alleging strict confidentiality) although Peavey agreed to relieve VA of liability. VA acts of malpractice served to cover-up various injuries to Peavey KUB while intentionally providing Dr. Paulson 1968 erroneous summary with its misrepresentations to various agencies and doctors. VA & NPRC conspired to suppress records and eventually IRS and USDOJ engage in fraud on the courts with other defendants to violate 18 USC § 1001.**

67.    1968-1972 Peavey suffer further injury, continued non-social discharge from penis. The document summarizing VA medical assistance indicate a social problem where Welfare cut Peavey off from Medicaid and his wife divorced him and his medical condition restricted him to light work with no work during periods of discomfort. His SSA earning records show earning below the poverty level due to disability which was compensated 40% through 1972. Peavey had married 1968 and was father of four children by 1972. Wife got a divorce during 1971 or 1972 not interlocutory during period when Peavey still suffered from non-social discharge.

68.    VA continues suppress records and Peavey embraces ISLAM 1971-1972. Peavey Re-enter VA Rehab Ch 31 at this time begin stipend when in school and complete VA Rehab 1976 graduated with BA Degree from Rutgers University. At no point during this period was Peavey income above the poverty level. Peavey was gainfully employed 1977 through 1980.

69.    1982 - 1994 problems with EEOC/IRS and 1993-1995 problems with IRS liens and levies against Peavey's clients causing lose of business property. IRS threats to destroy client's files for using Peavey expert services, IRS place liens on Mamie A. Horne properties October 1994. Peavey claim IRS acts were takings in violation of his 5th USCA.

70.    IRS maintains the lien on Horne / Ingram Property through 2001 when Secretary O'Neal order the lien lift From the Property located at 14735 5th Street Dade City Florida 33526. The lien had remained from October 1994 through that date not withstanding the fact that it was

23

placed on the property while Mamie A. Horne was the owner and she had entered a closing agreement with IRS on or about December 5, 1990 for the tax period (1988) claimed for the lien. IRS act of mis-conduct had been reported to Secretary Snow, and his successor Secretary O'neal. Peavey requested that IRS provide Horne a copy of the Certificate of Tax Assessment to indicate IRS was authorized to place the lien but IRS continually refused.

71.     December 2000 Horne transferred the property to Peavey to foreclose his claims against the properties and he was the owner when the IRS released the lien September 14, 2001. Peavey has a fiduciary responsibility to Horne and the Estate of Victoria Ingram because of his position and Horne and Ingram medical condition related to how the properties changed hands.

72.     1993-1995 NPRC admit Peavey VA claim was filed with VA August 1, 1967 when Peavey was discharged from the US Army evident by DA 644 in his OMPF. Mr. Levine deputy director of military records NARA admit 5-12-93 VARO 317 St. Petersburg request Peavey DD 214 to show Peavey filing an original claim. VA confiscated Peavey old VA Disability ID at that time and establishes a brill file and attempt to replace Peavey original VA disability files.

73.     317 VARO Terminated all Peavey entitled benefits alleging he was dead [effectively March 1, 2001] notifying Peavey's family on or about March 29, 2001. On April 7, 2001, Peavey notified VA he was not dead after his benefits were not deposited and VA did not restore Peavey benefits. Peavey contacted 317 VARO and also Congresswoman Carrie Meeks. VA did not restore Peavey benefits until July 26, 2001. This was an act of taking without due process.

74.     Peavey filed administrative complaints charging taking 9/10/02 and VA threaten to discontinue Peavey benefits again indicating that the US Postal Service notified VA that Peavey had changed address. VA again discontinued Peavey compensation May 1, 2003 through June 30, 2003 alleging VA was recouping an overpayment. VA disregarded Peavey medical condition which was rated 7007 60% hypertensive cardio vascular disease [with CHF] at the time since 1994. This was another taking in violation of Peavey rights to due process. It was malicious because it aggravated Peavey medical condition.

75.     VA acts of arbitrary discontinuing Peavey medical benefits were acts of reprisal and intimidation and in tandem with IRS continued Lien. The IRS pulled the lien off after Peavey disability was restored but refused to provide the certificate of assessment to Horne.

76.     Peavey filed Peavey v. Alberto Gonzales in US District Court for District of Columbia cv 05 0819 RWR because he had federal standing given the federal agents has engaged in a taking under color of law and also violated his rights which exist under 5th USCA and §10 APA 5 USC §§ 552, 706. VA actions depriving him of entitled benefits and aggravated injures which showed up as a hernia and grotesque hydrocele.

77.     Peavey communicated with Mamie A. Horne and encouraged her to acquire an attorney and to the best of his information believed she had acquired and attorney who she indicated was reluctant to make the entire claims against the SSA, OPM and IRS. Peavey held the property and believed he was required to continue any administrative remedy. Peavey filed complaints and administrative actions against IRS in the Horne Matter. As early as 1989, he prepared Horne (sic) (amended returns 1985-1987) using the accrual method of accounting for her lump sum EEOC payout. Subsequently defending that method of accounting (sic) (he note as proper) to place the injured person in the place to make them whole. After much IRS examination and concern about the method, an administrative engagement produced a closing

24

agreement between Horne and IRS December 5, 1990. This produced a supposed administrative remedy. C-pg 10 ¶ 55-60.

78.     Peavey submitted FOIA request for authentic copies of federal records of government agencies including IRS who he accuse of offenses related to obstruction of justice and various misconducts to include engaging in pattern of threatening, and harassing him and his clients and threatening to destroy their records again naming IRS as the offending agency and Mamie A. Horne as a client.   63; ¶85-87.

CHARGE V

**Proactive and conspired acts of VA and UDSOJ OBSTRUCTED JUSTICE...were acts of fraud on the courts and procedural violations of §10 APA while USDOJ refused to prosecute defendants violations of Peavey rights existing under 5th USCA. Defendants violations of 18 USC §1001 and illegal destruction of federal records were ignore by USDOJ.  IRS engaged in reprisal discrimination acting in concert with Pasco County and Dade City to deprive Peavey and his client Mamie A. Horne 1994 of property.  USDOJ defended IRS misconduct before the court while the agency labels IRS actions collection activities.  These were Biven type actions with federal and state actions violating 42 USC § 1983.**

79.     Peavey filed Peavey v. Alberto Gonzales in US District Court for District of Columbia cv 05 0819 RWR April 25, 2005 alleging Biven actions against IRS, VA and other federal agents because of the defendants continuing torts which deprived him of business and private properties:

        a)      2005-2008 Peavey negotiate with City of Dade City and George Rogmanoli who discussed looking back to Horne 5301 application and constructing the property based upon the earlier loan agreement between Horne and Pasco County.   City of Dade City and Pasco County's promises were not in good faith.  Horne filed US District Court for the Southern District of Florida Mamie A Horne v. SSA et al 08: cv 022334 Altonaga/Dube  and Karla Owens attorney for City of Dade City provided false statements asserting that Horne did not lived in Dade City and  Horne had not  filed for Special exception during 1996.

        b)      Karla Owens was aware her statements were false because she was  engaging in conversation with Peavey and George Rogmanoli about looking back to Horne housing construction application based upon the earlier conditions which included SPX-96-2 at the time she made the false statement to the court.

        c)      George Rogmanoli and IRS were before the Court in SD Florida at the time Karla Owens made the false statements and remained silent.  These Defendants knew Owens statements were false because they had been involved earlier during the SPX-96-2 application. Peavey entered the true facts into the US District Court proceedings and Judge Brown would not enter Doc-42 in  08: cv 022334 Altonaga/Dube  and recommended dismissal of the case with prejudice as to City of Dade City and Scott Black Mayor. The Court refused Horne motion to enjoin Peavey Doc-56.

        d)      Peavey filed US District Court for Middle District of Florida Peavey v. Mayor Scott Black et al 08-09 CV 01975 JSM/AEP September 29, 2009.  The US District Court for District of

25

Columbia dismissed Morris J. Peavey, Jr. v. Alberto Gonzales 05 Cv 0819 RWR on September 29,2009 and would not accept the timely appeal filed by Peavey.  US DOJ controlled all proceedings.

e)      George Rogmanoli entered the order Doc-70 from Horne v. SSA 08: cv 022334 Altonaga/Dube  which was obtained by fraud in SD Florida into the Middle District of Florida Peavey v. Scott Black Mayor et al 09 cv 01975 JSM/AEP proceeding moving for dismissal due to res-judicata.  Not withstanding the fact that it was obtained by Karla Owens false statements in violations of the Oath of admission to the Bar.

f)      In taking the oath of admission to the bar one must swear to "never seek to mislead the Judge or Jury by any artifice or false statement of fact or law." (a lawyer shall not knowingly make a false statement to a tribunal); 4-3.3(a)(2) (a lawyer shall not knowingly fail to disclose a material fact to a tribunal); 4-3.4(a) (a lawyer shall not unlawfully alter, etc., a document); 4-3.4(b) (a lawyer shall not fabricate evidence, etc.); 4-8.4(b) (a lawyer shall not commit a criminal act reflecting adversely on honesty, trustworthiness, or fitness to practice law); 4-8.4(c) (a lawyer  shall not engage in conduct involving dishonesty, fraud, etc.); and 4-8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice) (attorney solicited false testimony, thereby allowing his client to perpetrate a fraud on the court);  Florida Bar v . Aaar, 394 So.2d 405 (Fla.1980)

80.    Karla Owens provided information to Pasco County Sheriff and the news about a dead body being found on the property located at 14735 5th Street, Dade City, Florida 33526.  The Sheriff looks for Peavey in Tennessee although he lived in Miami Florida and held a valid driver license with the Miami Florida Address. No one from the Sheriff Department contacted Peavey at the Miami Address about a dead body being found on the property:

a)      During the period between August 2008 and October 2008 Peavey was in Glasgow Kentucky assisting his daughter, Jennifer Peavey, who had experienced a lock out from her residency medical practice at Glasgow Family Practice and was experiencing race discrimination.  The records show that the acts against Peavey family by EEOC and USDOJ agents are continuous torts and wide spread.

b)      The Pasco County Sheriff Department called Peavey's daughter, Amie Peavey, who lived in Murfreesboro, Tennessee questioning her about the whereabouts of her father indicating that a dead body was found on his property located in Dade City, Florida.

c)      Peavey wrote the Pasco County Sheriff and Karla Owens and indicated that relatives were contacted by his daughter, Amie Peavey, telephone call to his sister Mamie Horne and the family concern that Pasco County Sheriff was looking for him. Neither Pasco County Sheriff nor Karla Owens responded to Peavey correspondence so he notified his congressional representatives because he believes such actions were acts of intimidation or a ruse to frighten his family and deter his travels to the state of Kentucky.  All actions were taken by Karla Owens in tandem with her releases to TBO news paper.  Her representations to TBO were given during the time she made clearly false statements to the court in SD Florida.  The news statements Owens made about Horne to the press show that Karla Owens knew Horne owned property at the time she told the court Horne never lived in Dade City.

Z6

81.    USDOJ controlled the court actions and continued to stay discovery which clearly show continuous intimidation, fraud on the court and violations of due process:

82.    Mr. Michael May, Esq. was assigned for USDOJ to litigate the action Peavey open in Peavey v. Scott Black Middle District Florida 08-09 01975 JSM/AEP. Peavey provided him a record from his file and copies of Doc-42 from the flawed US District Court proceeding in Mamie A Horne v. SSA but Mr. May insists in arguing to protect the IRS misconduct labeling it as a collection depending in the court continuing the fraud against the court:

   a)  Pasco claim pendency Doc-5 and enter Doc-6 move to dismiss based on res-judicator using the fraudulently obtained order Doc-70 obtained in SD Florida. All defendants act to continue their silence about Karla Owens fasle statements. Peavey Doc-9 and Doc- 14 notified the court of the officers misconduct and other problems related to staying discovery 11/5/09 and November 20, 2009. All defendants' fraud and bad faith conduct upon the court.

   b)  USDOJ file motion to dismiss Morris J. Peavey, Jr v. Alberto Gonzales 05 Cv 0819 and the US District Court dismissed and would not enter the Appeal which was submitted moving for authentication of US Army records and attempted to block Peavey motion for appellate mandate and his right to amend the complaint if in fact there were facial flaws.

   c)  The US District Court in the Middle district of Florida act to stay discovery in all matters related to USDOJ motion while USDOJ acted to extend delays in the matter related to production of records in Peavey v. Alberto Gonzales which had been taken in US Court of appeals for the District of Columbia Case No. 5389. Peavey provided the information to the court in that case evidence showing that defendants were acting deliberately and intentionally suppressing and altering federal records and deliberately acting to falsify the records while USDOJ remained silent and or assisted in falsifying the records. Defendant's motion for summary dismissal was filed beyond the statutory dead line and did not oppose Peavey motion to mandate the production of federal record in the case.

83.    Mr.  Michael May  continue USDOJ false allegations that the action was a Tax Collection activity but refused to provide Mamie A. Horne the Certificate of Tax Assessement:

   a)  Mr. Michael May, Esq. for USDOJ/ IRS move the court to dismiss the proceeding in Peavey v. Scott Black based upon a series of IRS collection statues. Peavey provided Mr. May copies of documents from his file showing the IRS had a closing agreement with Mamie A. Horne related to EEOC Payout. Peavey provided Mr. Michael May information showing misconduct of IRS agents in violation of 26 USC §7121 and 7214.
   b)  January 08, 2010 through May 24, 2010 the case was stayed due to Defendant USDOJ motions to dismiss Peavey v Scott Black based primarily on a first file theory. Judge Moody stayed discovery, wait for 11th cir. Appellate decision in  Horne's v. SSA Case  11445BB. USDOJ write the legal brief for defendants in 11th Cir Appellate decision Case No. 11445BB.
   c)  Judge Moody granted defendants motion for stay and ordered administrative dismissal in Peavey v. Scott Black Doc-22. Defendants entered 11th Cir order refusing to rehear Horne v.

SSA and the clerk closed Peavey v. Scott Black Doc-23. Plaintiff filed their opposition Doc-24 entered into the court 4/27/10 and Judge Moody did not render a decision. January 11, 2010 the motion to stay discovery is granted upon United States Motion Doc-17 and April 12, 2010 Judge Moody stay the proceeding ordering it to be administratively closed once the defendants notify the court in writing of the decision of the 11th Circuit Court of Appeals. Scott Black Doc-23 enter the Notice denying the rehearing and the case is close.

d) The court in MD Florida 08-09 01975 came to a final decision. Plaintiffs filed a timely NOA Doc-25 then filed an appeal with the 11th Cir Docketed as Case NO. 10-12441FF and the USDOJ for IRS argued the Appeal Court lack jurisdiction to hear the final order of the US District Court in the matter. Peavey Doc-24 was entered April 27, 2010 in opposition filed the NOA on May 24, 2010 when no opposition by any defendant was filed. The Court accepted the Doc-25 NOA and order Transmitial of the Apopeal package to the 11th Circuit Court which Doc-USCA NO.10-12441-FF. Plaintiffs provided the SD FLA and MD FLA bills or particular showing that defendants were engaging in fraud to obstruct discovery while alleging that they were allowed information of the outcome of the cases and when those (first filed theories) did not fly they engaged in ex-parte conferences which brought those outcomes about.

e) Plaintiff's appeal before the 11th Cir Court of appeal provided the court with the facts showing the defendants acts of bad faith arguing first filed theory; defendants fraud on the court in SD FLA; defendants standing before the 11th Circuit (Dade City filed the motion and was not named in the docket...neither did Dade City timely perfect the appeal) while United States brief provided the defense while never submitting to Judge Brown jurisdiction and Pasco County timely filed the appeal but was in default in the proceeding below.

f) United States moved the 11th Circuit to dismiss USCA NO. 10-12441-FF arguing the 11th Cir. Court lack jurisdiction as though the court did not know its own jurisdiction. Plaintiff appeal contained the discovery information showing that Defendant IRS had engaged in reprisal discrimination violating Horne rights existing under 26 USC §7121.

84. USDOJ challenges the 11th Cir Court of Appeal jurisdiction to docket Case NO. 10-12441FF and moved the court to refuse the appeal. Clerk John Ley dismissed the appeal although it had been taken on a final order from the US District Court for MD Fla. and the certified record had been sent up to the appeal court. USDOJ first filed defense had failed and they were allowed a do-over. When the case was returned to Judge Moody he granted USDOJ motions to dismiss ordering Peavey to re-file his petition:

a) The Court in 08-09 CV 1975 reopen the case and ordered discovery November 4, 2010 and upon an ex-parte communication between USDOJ and Judge Moody the case was again closed November 10, 2010 and all motions to compel discovery has been denied.

b) 09-14-1010 Judge Moody order Doc-27 granted defendants 6;8;13 not withstanding the evidence showing their acquisition by using fraud on the court ordering plaintiffs to admend their petition but providing not only the defendants same defenses based upon fraud with the exception of the first file theories and allowing arguments on facts while denying the plaintiffs their rights to challenge them through discovery.

c) 10/4//2010 plaintiffs Doc-28 amend their petition within 20 days as ordered by the court and defendants moved for it to be dismissed again using the same defenses excepting

the first filed theory. Plaintiffs provide the court with proof that Defendants are acting to provide misstatement about the exhausting administrative remedies and avoiding discovery to keep their flaw claims covered. IRS had a closing requirement with Horne and continued to refuse her access to agency records showing the reprisal action and misconduct.

d) Doc-32 Judge Moody re-opens the case and ordered discovery on November 4, 2010. USDOJ again engaged in ex-parte electronic communication Doc-34, 35, 36 with Judge Moody all communication transpiring November 10, 2010. The Judge Grant defendant's ex-parte stays on November 10, 2010 and again orders Plaintiff to amend their complaint within 20 days to dismiss the proceeding in to enter related due process and discovery documents and USDOJ move for ex-parte stay of the proceeding arguing first filed rule.

## VA ENGAGE IN A CONTINUING TORT TO CONTINUED ITS ACTS UNDER COLOR OF 38 USC § 511

85.      Peavey has provided a request for status and records from VA. First he had provided an abstract requesting authentication. Second he requested statements and identification of the dockets in this matter showing the VA documents used to formulate the BVA decisions. Third he has requested information showing clarification of the remand and information showing what time frame is required to prefect and appeal with Court of Veterans appeal on any issues outside of the CUE. Peavey has been provided multiple responses showing all response as FOIA request which might take a year:

a)      First Peavey provided VARO 317 a copy of the abstract of relevant records which he submitted with DD Form 149 requesting authentication for use by ABCMR. Peavey submitted copies to BVA, and E. Sheneki, Secretary of VA. Upon Peavey submission to E. Shinseki on August 18, 2010 BVA issued its partial finding and decision that the injury to Peavey KUB was not service connect.

b)      BVA provided two docket numbers BVA 08-18-888 and 10-13-777. Peavey was initially provided information under 10-13-777 docket indicating that a malicon issue existed and notice of remand to VARO 317 April 12, 2010. VA action and the subsequent August 20, 2010 refusal to provide information about the status of remanded to VARO 317 violations of procedure because it allow VA to tie up records for years without explanation. VA administrative process does not explain the refusal to authenticate the abstract which contain Mr. Juliano January 20, 2006 submission from 1968 VA Hospital Brooklyn Hospital is normal.

c)      VA was made official custodian of Peavey US Army Health Records upon his US Army discharge. VA has constantly used administrative procedures of 38 USC§ 511 to obstruct access to US Army Health Records. On April 19, 1967 General Kimbrell notified Congressman Brassco Peavey was fit for full duty. The US Army statement was false because Peavey injured beyond retention according to AR 40-501 The VA act with the US Army to suppress, alter, and prematurely destroy various US Army and early VA records which show that the US Army knew its statements to congress false. Mr. Juliano January 20, 2006 VA records submission contradict US Army allegation that Peavey was fit for full duty.

d)      The abstract contain US Army Health Records, US Army medical profiles; records of 90 days trail; 30 days convalescence leave; Dr. Wise US Army Dr. Notes "compensation case"

on 22 Dec 66 three days after the return from 30 days convalescence leave; 23 Dec 66 Dr. Lafallet notes 24 hours after Dr. Wise indicating Peavey fit for full duty which is CUE and early VA records to include the VA Brooklyn Hospital 1968 records. These records provide information showing Peavey medical condition and VA efforts to suppress certified medical records; VA falsifying the period of hospitalization showing it in reports as two days OPC; VA continued denial that the period of hospitalization ever existed. Mr. Juliano submitted the report and Peavey added it to the abstract it proves that VA has continuously suppressed facts showing Peavey was not fit for full military duty.

86. VARO 317 does not have the jurisdiction to resolve a BVA CUE which relate to suppression of VA Hospital records or the authority to remedy any matter related to fraud resulting from the suppression. VARO 317 does not have jurisdiction to decide any §10 APA 5 USC § 552 or 706 claim made by Peavey. VARO 317 acting as custodian of Peavey US Army Records has refused these records to ABCMR from May 9, 1968. VA 1968 Brooklyn Hospital records which Mr. Juliano submitted January 20, 2006 were forwarded to ABCMR and he complain to Secretary of US army because ABCMR indicate that an exhaustive search does not show any records exist with NARA for Peavey. VA employed Mrs. Jennifer Kaldor as DORD officer in the VARO 317 process and she had also been named as the VARO 317 FOIA Officer. Her August 25, 2010 respond directed Peavey to contact BVA and she identified her self as FOIA Officer. The formulation of the so-called remand continues obstructing the records:

a) Peavey request BVA and VARO 317 to authenticate the history and etiology of injuries to his cardio-renal systems. The latest instructions indicate that there is a four month filing deadline necessary for him to oppose BVA continued misclassification of VA 1968 hospital report. Jennifer Kaldor of VARO 317 refuses to provide any information necessary to intelligently perfect a submission to the Court of Veterans review. The arguments related to BVA decision is not for this forum however VA acts refusing access to records custodian are violations of Peavey rights existing under §10 APA and 10 USC §1552(a). They are continuous torts and within the jurisdiction of this court.

b) Peavey submitted BVA COWC AND supplement to VA Form 9 dated October 27, 2003. 6 pages. Response to VARO L. Rue and subsequently February 5, 2004 to Elijah D. Clark Chairman BVA requesting status of COWC filed per L. Rue. BVA letter by Sharon Braxton dated February 19 2004 acknowledging the fact that VBA received VA Form 9 on October 30, 2003 and forwarded to 317 VARO January 5, 2004. Peavey could not get a clear statement from BVA from October 27, 2003 until BVA COWC dated 8/28/05 stamped adj. int Aug 31, 2005 show 171 pend with initials. Stamped VARO 317/231A received Aug. 31, 2005. 3 – pages. There fore he file with US District Court respecting the TAKING of entitled benefits in violation of his Constitutional rights. Citing: Cushman v Shinseki. This matter has never been docketed.

30

c) DROD VA appeal acceptations to VA review with substantial statements and documented evidence tabulated under seven tabs. Jennifer Kaldor was submitted a response dated May 7, 2009 from Morris J. Peavey, Jr. the Appellant re: 317/SSD/PA/tmd with annexed VARO 317 Decision Review Officer Decision Dated April 22, 08 6-pages copying VARO 137 letter; by Barry M Barker dated March 06, 2009 Re:317/VSC/21PC/VK 2-pages. And Senator Bill Nelson to Morris Peavey Re: VARO 317 dated Mar 6, 2009 documents were submitted as Tab-one.
Tab- 2 provided FOIA REQUEST FOR VA APPEALLATE INFORMATION FROM JAMES P. TERRY, CHAIRMAN VBA documenting Morris Peavey dated April 3, 2009 requesting information from BVA file related to COWC and status of all appeal able issues before the BVA while providing copy of Notice of Death to Peavey Estate with VARO 317 by Beatrice L. Rue dated 8/1/03 notifying Peavey no credible information showing VA ever received Notice of death and VA Form 9 should be received by VA on or before October 30, 2003.

d) VA has continued to refuse to authenticate any of the records submitted from its files and as the custodian of Peavey US Army health records they refuse to provide ABCMR official records. ABCMR refuse to accept any records provided by Peavey and the US Army the legal custodian refuse to order the records to be transmitted to ABCMR or correct the misconduct of its agents.

87. VA continues its protracted obstruction and refuse to either authenticate any records or provide records of which US Army has legal custody. US Army refuse to order the release of these records and ABCMR indicate it can not act while VA argue they need not release federal documents which show that US Army knew Peavey was injured beyond AR 40-501 and not fit for further retention in the US Army after 22 December 66 and was order to perform duties beyond his medical profiles and denied proper medical care.

DAMAGES

85. UPON the information and petitions and records Plaintiff has been deprived of proper US Army Records and some early VA records due to defendants violations of §10 APA 5 USC 706 and 552 injuring him in his rights to due process and equal protections under the law. He has suffered the various injuries numerated in his complaint but not exclusive to those injuries: US ARMY DAMAGES-----

a) Injuries in his military career and injuries to his person and property. He ranked SP4/E4 and was discharged from the US Army as PVT E-1 the same rank the had on induction.

b) Because of physical disabilities Peavey lost MOS, Airborne Status, personal and monetary benefits due to changes in MOS and because of medical profiles.

c) Peavey injuries caused him lost of uncompensated earning capacities even after being discharged from the US Army. The suppression of his injuries and malpractice cost him lost or income and VA benefits which were due to him. He also was divorced 1971 which can be attributed to his injuries and inability to support a family.

CIVILIAN EMPLOYMENT AND MEDICAL DAMAGES----

31

- Peavey was initially unable to remain in VA 31 Rehab and denied total disability because of the VA acts of fraud and US Army Cover-up.
- Peavey earnings were not above the poverty level August 1, 1967 through 1977 after completing VA 31 Rehab...1980-1988...1991...1995 compensated VA disability 60 %CHF 1995 through 2003 and 80% [100% due to unemployability] 2003 to present.
- Peavey obtained BA Rutgers Accounting and Economics 1976 and MBA Long Island University 1980 and has had to endure harassment form federal agencies in his business and professional practices as provided in the complaint causing him business and property loses in excess of $ 3,000,000.
- Peavey medical condition has caused him hospitalization in 1966 US Army hospital; 1968 VA hospital; treatment in private and VA hospitals 1991, 1993-1995; 2002-2004; Hospitalization Columbus Hospital Newark, NJ MI and Kidney dysfunctions 2005; University Hospital of NJ ACS and bradycardia 2006. The combined hospital cost for this medical treatment is in excess of $450,000.
- Peavey have made partial claims for these damages and defendants have paid only veteran disabilities for injuries 1966 through 1973 40% combined with 100% during 1968. 10% 1973 with VA 31 Rehab stipend through 1976. 10% from 1976 through 1994 and 60% 1994 through 2003 and 100% from June 2003 present.

## VIII – REMEDY

89. UPON the information and petition and records the plaintiff has clearly suffered and continues to suffer violations of his constitutional rights herein cited. Having suffered injury due to the acts of the herein named defendants, plaintiff has a right to be made whole. Plaintiff respectful request that this court fashion a remedy which will include but is not limited to the following:

a) Declaratory Judgment that the plaintiff has the constitutional rights herein guaranteed. There by ordering a finding that all defendants' acts and continuous acts to deprive Plaintiff of his US Army records are constitutional violations in that the deprivation has violated the rights which he has under the 5th and 9th USCA.

b) Injunctive relief and orders mandating:

Secretary of the Army and The Army Review Board to examine the record based upon the plaintiff right to have had a Medical Evaluation Board Review and the facts of record integrated into any disciplinary actions which he was subjected. Review of the rights of the Plaintiff to have been accorded the right to have the special court martial and the MEB Review incorporated in the findings of facts. Plaintiff having not been accorded these rights and privileges overturning the court martial judgment dated January 23, 1967 and restoring Plaintiff records showing the rank which would have attained being held for the convenience of the Government through August 5, 1970.

c) Injunctive relief and orders mandating:

32

90.  Declaratory Judgment that plaintiff has a right under 5 USC § 552 to the records which he has requested from:

      a)  The National Personnel Records Center
      b)  The Department of Veterans Affairs
      c)  The VA Hospital Center Brooklyn NY
      d)  The Department of Treasury / IRS

Injunctive Relief ordering and mandating that all such requests shall be presented forthwith and caring the necessary official authentication as required by FRCP Rule 44 recognized as an order from this court to provide them to the Plaintiff.

91.  Declaratory Judgment fashioning a relief necessary to make the Plaintiff whole in his person and his property for the injury and injustice which he has suffered:

      a.  Loses related to injury from September 17, 1966.
      b.  Loses related to disability not compensated 1970 thru 1976 while in VA Rehabilitation. That the US Army should act to consider the restored records as the official records and to the extent that those records can not be made whole and the plaintiff can not be compensated that the records be considered upon the records provided by the Plaintiff and the [suffering lose wages, pain and suffering and lost tuitions and associated punitive damages] be paid to the plaintiff as required by the maximum under §10 APA in the amount of $1,000,000.00 One million US Dollars with the right to pursue other remedies before the US Court of federal claims:
      c.  Loses and Injuries due to IRS takings and violations related to injuries cause to Plaintiff business and personal properties.
      d.  Loses of career and permanent diminished capacity claims against the US Army due to its violations of due process and acts in concert with VA and NPRC abusing the administrative processes of these agencies to cover-up Army malfeances.

92.  Plaintiff and his family have suffered serious and severe injuries and lose of properties resulting from the defendants' violations of plaintiff's constitutional rights.  He is entitled to injunctive relief; which this court and the court of federal claim may award.

Respectfully Submitted:

Morris J. Peavey, Jr.  Pro Se
12315 NW 23rd Avenue
Miami, Florida  33167
1-301-688-0759

33