UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MORRIS J. PEAVEY,**

    **Plaintiff,**

    **v.**

**UNITED STATES OF AMERICA,** *et al.***,**

    **Defendants.**

Civil Action No.  11-937 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff Morris Peavey has filed a largely incomprehensible, 33-page, single-spaced Complaint against the United States and seven federal officials.  As best the Court can discern, the crux of his claim appears to relate to his treatment by Army officials after he was injured in 1966 while enlisted, the alleged falsification or destruction of his medical records, and Internal Revenue Service liens on his properties.  Not surprisingly, this Complaint essentially reprises claims he has previously brought without success both in this District and in the Middle District of Florida.  As a result, much of the current suit is barred by the doctrines of claim and issue preclusion, and what remains is insufficient as a matter of law.  The Court, therefore, will grant Defendants' Motion to Dismiss.

**I.**    **Background**

According to Plaintiff's Complaint, much of his trouble stems from his enlisted term in the United States Army from 1964-67.  See Compl. at 4.  In particular, events seem to have gone downhill from the moment he was struck as a pedestrian by an automobile in September 1966. Id.  The injuries he suffered were not correctly diagnosed, which led him to go "AWOL for proper medical treatment." Id. at 5.  Although unfit for military service, he was not released

1

from the Army. Id. Subsequently, the Army and the Department of Veterans Affairs "deliberately and intentionally suppressed [his medical] records." Id. at 7. In addition, the IRS has "consistently harass[ed], coerced, intimidated and illegally place[d] a lien on Peavey Clients['] property falsely alleging a tax collection liability exists." Id. at 8.

As Defendants here, Peavey has named the United States, Attorney General Eric Holder, Army Secretary John McHugh, Veterans Affairs Secretary "E. Sheskni" [*sic*], National Archives and Records Administration Archivist Adrienne Thomas, Treasury Secretary Timothy Geithner, Assistant United States Attorney Michael May, and Freedom of Information Act Agent Jennifer Kaldor. His causes of action (labeled "Charges") assert that he was denied proper medical care and his Army Health Records were altered and destroyed (Count I), id. at 11; his records were destroyed and falsely replaced with others, and he was denied FOIA access (Count II), id. at 16; federal agencies engaged in "reprisal discrimination" by placing "erroneous levies and liens on Peavey's clients['] properties . . . and Peavey's property," and the VA sent his family a fictitious notice of his death (Count III), id. at 21; Peavey was denied access to medical records and acts of medical malpractice were covered up (Count IV), id. at 23; and the VA and DOJ obstructed justice and committed fraud on the court and refused to prosecute violations of Peavey's rights, as well as depriving Peavey's client Mamie Horne of property (Count V). Id. at 25.

Plaintiff filed this Complaint on May 19, 2011, and Defendants have now filed a Motion to Dismiss, asserting numerous infirmities in his suit.

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C.

Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendants' Motion under both Rules 12(b)(6) and 12(b)(1). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

      Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiffs must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Though Plaintiffs may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the Plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case — a dismissal under Rule 12(b)(1) on ripeness grounds — the court may consider materials outside the pleadings"); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.   Analysis**

The central argument Defendants assert is that Plaintiff has brought all of these claims before, both in this District and in the Middle District of Florida. As those suits were dismissed, the doctrines of claim and issue preclusion bar this action. The Court will first address this position as it relates to all Defendants except May and Kaldor. It will then consider the case against these two Defendants and, finally, move to a question concerning the Army Board for the Correction of Military Records (ABCMR).

    A.  Preclusion

In April 2005, Plaintiff filed suit in this District, No. 05-819, and named as defendants the Attorney General, Secretary of Veterans Affairs, Archivist of the United States, and Secretary of the Treasury, four of the same defendants named here. See 05-819, ECF No. 1 (Complaint). Just as he has here, he claimed in that suit Constitutional violations under the First, Fifth, Ninth, and Fourteenth Amendments; the destruction and suppression of his medical records; harassment by the IRS, including filing a claim against him for back taxes; an unlawful taking of his medical benefits; a denial of access to records; an uncompensated personal injury; an improper death notice; the discontinuation of his benefits; an improper denial of his FOIA requests; the failure of the ABCMR to correct his records; and obstruction of justice. Id. at 2-3, 7-8, 11, 13, 15, 17.

On Sept. 28, 2009, Judge Richard Roberts issued a detailed opinion addressing all of Plaintiff's claims and dismissing them. See Peavey v. Holder, 657 F. Supp. 2d 180 (D.D.C. 2009). Despite characterizing "[p]ortions of Peavey's allegations . . . [as] difficult to understand and . . . not clear enough to be illuminating," id. at 182, the court went to great lengths to carefully discuss each of his causes of action. For example, the court separately analyzed and rejected Peavey's challenge to 38 U.S.C. § 511, which limits judicial review of the VA's benefits decisions, id. at 185-86; his claim that the VA's benefits decisions were improper, id. at 186-87; his FOIA claims for the release of medical and military records, id. at 187-90; his allegation that different agencies concealed, altered, and destroyed government records and impeded his ability to obtain benefits and correct his military records, id. at 190-91; his claim for obstruction of justice, id.; his constitutional and common law torts, including those brought under the Federal Tort Claims Act, id. at 191-92; his claims under civil rights statutes, id. at 192; his Bivens-based constitutional torts, id. at 192; his claims against the IRS, id. at 192-93; and his claim for review

5

of the ABCMR's decision not to correct his military records. Id. at 193. On Aug. 9, 2010, the D.C. Circuit summarily affirmed this decision, holding that the "merits of the parties' positions are so clear as to warrant summary action." See ECF No. 65 (Order) at 1.

Undeterred, while that suit was pending, Plaintiff also filed an action in the Middle District of Florida in September 2009, naming a number of Dade City, Florida, officials, as well as Treasury Secretary Geithner. See Motion, Exh. 3 (M.D. Fl. Complaint) at 1. Indeed, that Complaint even notes the 2005 D.C. case as a related action. Id. at 2. Although most of the claims there concern actions by Florida zoning officials, Plaintiff also alleges once more that the IRS harassed Peavey's client, Mamie Horne, and improperly placed a lien on her property; the VA improperly destroyed his original records; the IRS attached a lien on Plaintiff's property; and the VA sent his family a false death notice and discontinued his benefits. Id. at 7, 12. This case was also dismissed for failure to comply with Fed. R. Civ. P. 8(a); indeed, that court, too, found that "[m]any of the facts and claims are incomprehensible, and the complaint is laced with unfounded legal conclusions." Peavey v. Black, 2011 WL 2457901, at *1 (M.D. Fl. 2011).

To the extent this case involves the same parties as his prior cases, Peavey's claims are barred by the doctrine of claim preclusion (also known as *res judicata*). "A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" Natural Res. Def. Council v. EPA, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006)). Whether a case presents "the same cause of action turns on whether [the lawsuits] share the same nucleus of facts." Apotex, Inc. v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004). Each of these elements is present here with respect to those Defendants – *i.e.*, the

Attorney General, Secretary of Veterans Affairs, Archivist of the United States, and Secretary of the Treasury – who were all involved in an earlier case. In other words, the claims are the same, the parties are the same, and there has been a valid, final judgment by a court of competent jurisdiction.

That Peavey's arguments may differ somewhat from those presented previously does not allow him a second bite at the apple. Claim preclusion "bars relitigation not only of matters determined in a previous litigation but also ones that a party <u>could have raised</u>." NRDC v. Thomas, 838 F.2d 1224, 1252 (D.C. Cir. 1988) (emphasis added); see also Natural Res. Def. Council, 513 F.3d at 261("Claim preclusion is . . . intended 'to prevent litigation of matters that <u>should have been</u> raised in an earlier suit.'" (quoting SBC Commc'ns Inc. v. FCC, 407 F.3d 1223, 1230 (D.C. Cir. 2005)) (emphasis in original)).

With respect to his claims against parties <u>not</u> named as Defendants in the prior cases – *i.e.*, the United States and the Secretary of the Army – issue preclusion serves as a bar to all of Plaintiff's claims that were previously decided. "The objective of the doctrine of issue preclusion (also known as collateral estoppel) is judicial finality; it fulfills 'the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.'" Yamaha Corp. of America v. U.S., 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting Kremer v. Chemical Contr. Corp., 456 U.S. 461, 467 n.6 (1982)). To that end, the doctrine provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980).

Issue preclusion requires three elements: first, "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case";

7

second, "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and third, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." Martin v. DOJ, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp., 961 F.2d at 254) (internal quotation marks omitted). Unlike claim preclusion, "issue preclusion does not require mutuality of parties." Gov't of Rwanda v. Johnson, 409 F.3d 368, 374 (D.C. Cir. 2005) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971)).

There can be no doubt that all issues raised here against the United States or the Secretary of the Army have previously been contested and submitted for judicial determination and have actually and necessarily been determined – *e.g.*, Plaintiff's claim that the VA's benefits decisions were improper; his FOIA claims for the release of medical and military records; his allegation that different agencies concealed, altered, and destroyed government records and impeded his ability to obtain benefits and correct his military records; his claim for obstruction of justice; his constitutional and common law torts, including those brought under the Federal Tort Claims Act; his claims under civil rights statutes; his Bivens-based constitutional torts; his claims against the IRS; and his claim for review of the ABCMR's decision not to correct his military records. See Peavey v. Holder; Peavey v. Black.  The Court can conceive of no reason, furthermore, that precluding further litigation of this issue works any unfairness against Plaintiff. Cf., e.g., Yamaha Corp., 961 F.2d at 254 ("An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude."); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979) (unfairness concern heightened when plaintiff seeks to use collateral estoppel "offensively" against defendant when plaintiff was not party to prior suit); Blonder-Tongue Labs., 402 U.S. at

333 (fairness implicated when prior proceedings "seriously defective"). Although courts are sometimes hesitant to allow parties to use non-mutual issue preclusion offensively, cf. Parklane Hosiery, 439 U.S. at 329-33, the concerns motivating that hesitancy are not present where, as here, issue preclusion is used defensively.

Even were Plaintiff somehow raising new legal theories regarding Defendants' actions, those theories are so related to the previously litigated questions that they do not constitute distinct "issues." "If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." Yamaha Corp., 961 F.2d at 257-58 (quoting James Wm. Moore, Jo Desha Lucas & Thomas S. Currier, 1B Moore's Federal Practice ¶ 0.443(2) at 760-61 (1988)) (emphasis in original).

Finally, to the extent Plaintiff's claims in Count V concern new allegations about the actions of Florida officials, see Compl. at 25-26 (allegations against Dade City, George Rogmanoli, Karla Owens, and Pasco County sheriff), they are not named as defendants here, thus precluding the Court from exercising any power over them.

### B. Defendants May and Kaldor

Although it is arguable that certain claims against Defendants May and Kaldor may similarly be precluded, the Court, in an abundance of caution, will address these two Defendants separately. Plaintiff alleges that May, apparently in connection with litigating against him on behalf of the United States, has violated Peavey's rights. See Complaint at 9-10. Similarly, Kaldor is alleged to have acted improperly in relation to Plaintiff's FOIA requests. Id. at 3-4.

As Defendants correctly point out, see Motion at 13-14, the Westfall Act makes "an FTCA action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment." United States v. Smith, 499 U.S. 160, 163 (1991). Where the Attorney General certifies that the federal employee was acting within the scope of his employment at the time of the incident, any civil action shall be deemed an action against the United States, and the United States shall be substituted as the party defendant. See 28 U.S.C. § 2679(d)(1). As such certification has occurred, see Motion, Exhs. 4 & 5, the United States is substituted for Defendants May and Kaldor.

In order to pursue an FTCA claim against the United States, Plaintiff must exhaust his administrative remedies. See Wilson v. Libby, 535 F.3d 697, 711 (D.C. Cir. 2008). Under 28 U.S.C. §2675(a), no such action shall be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." Absent full compliance with this exhaustion requirement, "courts lack jurisdiction to entertain tort claims against [the Government.]" GAF Corp. v. United States, 818 F.2d 901, 904 (D.C. Cir. 1987) (footnote omitted).

In this case, Plaintiff has not pled that he exhausted his administrative remedies, nor has he argued such. The Court thus has no jurisdiction to hear the claim absent such exhaustion. See Colbert v. U.S. Postal Service, 2011 WL 6432515, at *3 (D.D.C. 2011) ("A plaintiff must therefore plead administrative exhaustion in an FTCA case.") (citing Fed. R. Civ. P. 8(a)(1); Eastridge v. United States, 2007 WL 495797, at *12 (D.D.C. 2007)).

C. ABCMR

The final issue worth brief discussion is Plaintiff's request for the correction of his military records. Judge Roberts already addressed and denied Plaintiff's claim to have the

ABCMR correct his military records.  See Peavey, 657 F. Supp. 2d at 193.  Plaintiff, however, seems to have submitted a renewed application for correction to the ABCMR on Nov. 3, 2010.  See Motion, Exh. 6 (Dept. of Army Letter of March 22, 2011) at 1.  In March 2011, the Board indicated that it needed a particular form from Plaintiff in order to consider his application.  Id.  Plaintiff's claim here is thus not for a review of an adverse Board decision, but rather to require the Board to make a decision.  See Compl. at 16 ("Peavey has a right to ABCMR review of his US Army records . . . .  Defendant US Army . . . has taken no action . . . .").  Indeed, he references his Nov. 2010 request and the March 2011 response.  Id. at 19.

Following the May 2011 filing of Plaintiff's Complaint, the Board issued a ruling on June 6, 2011, denying Plaintiff's request.  See Resp. to Plaintiff's Request for Judicial Review, Exh. A (ABCMR Letter of June 6, 2011) at 1.  The Board subsequently denied Plaintiff's request for reconsideration of that decision on Nov. 2, 2011.  See id., Exh. B (ABCMR Letter of Nov. 2, 2011) at 1.  Plaintiff's demand in his Complaint that the Board review his records is thus moot.

Article III of the United States Constitution limits the jurisdiction of the federal courts to resolving "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  Federal courts therefore lack "the power 'to decide questions that cannot affect the rights of litigants in the case before them,' . . . and [are confined] to resolving '"real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."'"  Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (internal citations omitted).  When a claim becomes moot, federal courts cease to have jurisdiction over it.  See id. at 477-78; Columbian Rope Co. v. West, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (federal court must dismiss case as moot when "'events

have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future'") (citation omitted).

Article III's case-or-controversy requirement subsists throughout the life of the case: "To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed." Lewis, 494 U.S. at 477. "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of Judicial Conference of U.S., 264 F.3d 52, 55 (D.C. Cir. 2001); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 45(1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (citation omitted).

Should Plaintiff seek judicial review of the Board's decision, he may file a separate suit under the Administrative Procedure Act, as the Court also noted in its Order of Jan. 27, 2012, denying Plaintiff's pleading styled "Motion for Judicial Review of ABCMR Decision." Had Plaintiff moved to amend his Complaint to seek review, which he did not, it is possible that this issue would have been ripe for decision; even this, however, is unlikely given that the remainder of the issues were already fully briefed and teed up for dismissal. In any event, the Court will make clear that dismissal of the new ABCMR claim is without prejudice.

**IV. Conclusion**

For the aforementioned reasons, the Court will grant Defendants' Motion to Dismiss and dismiss this case with prejudice, with the exception of Plaintiff's claims against Defendants May and Kaldor and any claim for review of the ABCMR's 2011 decision, which will be dismissed without prejudice. A separate Order consistent with this Opinion will be issued this day.

                                      */s/ James E. Boasberg*
                                      JAMES E. BOASBERG
                                      United States District Judge

Date: March 1, 2012